532 S.E.2d 64

### In re GEORGE GLEN B., JR.

No. 26742.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2000.

Decided June 8, 2000.

James P. Geary, II, Esq., Patricia L. Kotchek, Esq., Geary & Geary, L.C., Petersburg, West Virginia, Attorneys for Appellee Waneta B.

William H. Judy, III, Esq., Judy & Judy, Moorefield, West Virginia, Guardian Ad Litem for George Glen B., Jr.

Marvin Downing, Esq., Moorefield, West Virginia, Attorney for Appellee George Glen B.

Darrell V. McGraw, Jr., Attorney General, Katherine M. Mason, Esq., Assistant Attorney General, Beckley, West Virginia, Dennis V. DiBenedetto, Esq., Petersburg, West Virginia, Attorneys for Appellant Department of Health and Human Resources.

STARCHER, Justice:

This appeal from the Circuit Court of Grant County raises the question of whether a circuit court may terminate parental rights to a child solely on the basis that, several years prior to the child's birth, the parental rights to siblings of the child had been terminated. We also consider whether it is mandatory that the Department file a petition to terminate the current parental rights of a parent who has previously had parental rights to another child terminated by the court. We hold that while the Department does have a mandatory duty to file a petition, a circuit court may not terminate parental rights without additional evidence of abuse or neglect of the current child.

## I.

### Factual Background

George Glen B., Jr. was born on January 20, 1999. George is the second child born to appellees Waneta B. and George Glen B., Sr.; he is the third child born to Waneta B.

The day after George was born, the Department filed a petition in the Circuit Court of Grant County requesting emergency custody of the child, as well as seeking to terminate the parental rights of the appellee mother and appellee father. The petition was filed on the basis of two previous cases of abuse and neglect filed regarding siblings of George against the appellee mother. In the first case, filed in 1994, 13 weeks after a sibling was born, the appellee mother's parental rights were involuntarily terminated. In the second case, filed in 1996, the Department took custody of a sibling 10 days after her birth; the appellee mother and appellee father later voluntarily agreed to relinquish their parental rights to the child. In the instant case, relying upon a "temporary custody" order, the Department removed George from the hospital on January 22, 1999.

On January 25, 1999, the circuit court conducted a hearing to consider the merit of the Department's taking emergency custody of George. By order dated January 28, 1999, the circuit court stated that custody of the child was to remain with the Department, "[p]ending the Court's decision," and "[t]hat the Court . . . [would] render a decision . . . within the next forty-eight hours." Unfortunately, no additional orders were issued, and no other hearings occurred until a brief hearing was held on March 11, 1999.

By an order dated March 12, 1999, the circuit court made specific findings that there had been two prior cases involving allegations of abuse and neglect brought by the Department against the appellee mother in the first instance, and against both appellees in the second instance. The circuit court also found that "[i]n both previous cases, neither parent was capable of minimum acceptable parenting skills," and that both cases were resolved with the termination of the appellees' parental rights.

However, the circuit court declined to terminate the appellees' parental rights or proceed any further on the petition, concluding that a prior termination of parental rights, without more, was not a sufficient ground to terminate parental rights. The court found that:

> The fact that the Respondent, Waneta [B.] . . ., has had her parental rights terminated to two previous children, and the father George Glen B[ ][.] Sr., has had his rights

terminated to one previous child, is not sufficient evidence, absent no showing of abuse or neglect to George Glen B[ ][.] Jr., the current child.

The circuit court concluded that it would be improper "to terminate parental rights of the mother and father absent any showing of abuse or neglect of this child." Based upon these findings, the circuit court dismissed the abuse and neglect petition, and ordered the Department to return George to the custody of the appellees "in a manner that is in the best interests of the infant child."

The Department appealed the circuit court's March 12, 1999 order to this Court. In an opinion issued on July 12, 1999, we reversed the circuit court's order and remanded the case for further hearings. We held that the circuit court had erred in dismissing the abuse and neglect petition outright without allowing the Department an opportunity to present evidence regarding the circumstances surrounding the prior terminations of parental rights, and without allowing the parties to develop evidence concerning whether the appellee parents had taken steps to remedy the circumstances which resulted in the prior abuse and neglect petitions. *See In re George Glen B.*, 205 W.Va. 435, 443, 518 S.E.2d 863, 871 (1999). We also directed the circuit court to hold its future hearings pursuant to the procedures contained in the *West Virginia Rules of Procedure for Child Abuse and Neglect* and *W.Va.Code*, 49–6–2 [1998]. 205 W.Va. at 444–45, 518 S.E.2d at 871–72.

Upon remand, the circuit court conducted hearings on July 28 and 29, 1999, and allowed the parties to present a total of over 9 hours of testimony and argument. From this testimony as well as several hundred pages of exhibits, the circuit court issued two orders dated August 5, 1999 and August 30, 1999.

In its orders, the circuit court concluded that "there is no neglect or abuse of George Glen B[ ][.] Jr. by anyone, now or has there ever been." Accordingly, the court held that the Department had failed to show abuse or neglect by the appellee parents sufficient to warrant the termination of their parental rights.

In its findings, the circuit court found that the appellees had "substantially remedied the circumstances surrounding the prior terminations" of their parental rights.[1] The circuit court also found that the Department "has become so emotionally involved in this case that they cannot be objective," noting that the Department provided the appellee parents with no services, including visitation with George, without being ordered to do so by the court. In sum, the circuit court's order chastised the Department for only seeking termination and not considering other alternatives.

However, the circuit court concluded that George "may be at risk if he is returned to the [appellees] without appropriate supervision." The circuit court therefore ordered that while the Department would technically retain physical custody of George, a private company, Action Youth Care, was ordered to provide supervision for a gradual transition to ensure an appropriate transfer of George to the custody of his parents. The court placed full responsibility and authority for the transition and its timing on Action Youth Care:

> The primary responsibility of Action Youth Care is to ensure the safety of George Glen B[ ][.] Jr. Overnight visitation shall begin as soon as Action Youth Care determines it is in the best interests of the child. Action Youth Care may remove the child from the custody of his parents without further Order of this Court if they determine it necessary for his protection.

---

1. The circuit court's order states, in pertinent part:

   [T]he Court finds that Waneta H[ ][.] B[ ][.] and George Glen B[ ][.] have established a stable home which provides appropriate shelter and environment for George Glen B[ ][.] Jr.; that Waneta H[ ][.] B[ ][.] and George Glen B[ ][.] have established their ability to work together as a married couple to provide appropriate

   parenting for George Glen B[ ][.] Jr., including the ability to perform basic parenting needs such as feeding and diapering, and to provide nurturing suitable for his development; that Respondents have voluntarily sought parenting education which has resulted in learning and application of appropriate parenting skills; and that Respondents are actively addressing their needs to control anger and depression.

In the event the efforts at reunification should fail, Action Youth Care shall notify the Court and the Court will take such action . . . as may be appropriate.

The Department now appeals the circuit court's August 5 and August 30, 1999 orders.

## II.

### Standard of Review

■■■ The standard of review used by this Court when reviewing circuit court rulings in abuse and neglect cases is as follows:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996). It is with the above-mentioned standard of review in mind that we now review the circuit court's orders.

## III.

### Discussion

### A.

*The Duties Imposed by W.Va.Code, 49–6–5b*

The Department contends that *W.Va.Code,* 49–6–5b(a)(3) [1998] mandates that the Department file a petition to terminate parental rights where there has been an involuntary termination of parental rights to a sibling in a prior proceeding. *W.Va.Code,* 49–6–5b(a)(3) states, in pertinent part and with emphasis added:

(a) . . . [T]he department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

. . .

(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children; has attempted or conspired to commit such murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children; or *the parental rights of the parent to a sibling have been terminated involuntarily.*

The Department further argues that the circuit court erred in finding that the Department was required to use *W.Va.Code,* 49–6–5b(a)(3) with "sound discretion," and, in essence, erred in concluding that the Department abused its discretion by pursuing termination of the appellees' parental rights in this case.

The appellees, however, contend that if the Court adopts the Department's reading of *W.Va.Code,* 49–6–5b(a)(3), then the Department will be allowed to take temporary custody of a child and demand the termination of an individual's parental rights by showing that there has been a prior involuntary termination of parental rights—and without a showing of actual or imminent abuse or neglect of the current child. The appellees argue that the abuse and neglect statutes must be read together, and that to allow the Department to take emergency custody of a child and to seek the termination of parental rights without showing any abuse and neglect of the child would be constitutionally impermissible.

■■■ A reading of the plain language of the statute indicates that the Legislature intended to impose a mandatory duty upon the Department to initiate or join termination proceedings when certain circumstances exist. The application of the statute in situa-

tions such as the instant case is clear: When the parental rights of a parent to a child have been involuntarily terminated, *W.Va.Code*, 49–6–5b(a)(3) requires the Department of Health and Human Resources to file a petition, to join in a petition, or to otherwise seek a ruling in any pending proceeding, to terminate parental rights as to any sibling(s) of that child.

The Legislature has created procedures and levels of proof that the Department must follow in every abuse and neglect case. When the Department files a petition with a court alleging that a parent is abusing or neglecting a child, *W.Va.Code*, 49–6–2(c) [1996] imposes upon the Department the duty to prove its case by "clear and convincing proof" and "based upon conditions existing at the time of the filing of the petition." [2] If the Department seeks to take temporary custody of a child upon the filing of a petition on an "emergency" basis, without giving the parent the opportunity to be heard, *W.Va. Code*, 49–6–3(a) [1998] requires the Department to show that there exists an "imminent danger to the physical well-being of the child," and that there are no reasonably available alternatives to removing the child from the parent's custody.[3]

■ These procedural statutes must be read *in pari materia* with *W.Va.Code*, 49–6–5b(a)(3). So, while the Department has a duty to file, join or participate in proceedings to terminate parental rights in the circumstances listed in *W.Va.Code*, 49–6–5b(a)(3), the Department must still comply with the evidentiary standards established by the Legislature in *W.Va.Code*, 49–6–2 before a court may terminate parental rights to a child, and must comply with the evidentiary standards established in *W.Va.Code*, 49–6–3

**2.** *W.Va.Code*, 49–6–2(c) [1996] states:

In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department to remedy the alleged circumstances. At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

**3.** *W.Va.Code*, 49–6–3(a) [1998] states:

Upon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the court to be a fit and proper person for the temporary care of the child pending a preliminary hearing, if it finds that: (1) There exists imminent danger to the physical well-being of the child; and (2) there are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody: Provided, That where the alleged abusing person, if known, is a member of a household, the court shall not allow placement pursuant to this section of the child or children in said home unless the alleged abusing person is or has been precluded from visiting or residing in said home by judicial order. In a case where there is more than one child in the home, or in the temporary care, custody or control of the alleged offending parent, the petition shall so state, and notwithstanding the fact that the allegations of abuse or neglect may pertain to less than all of such children, each child in the home for whom relief is sought shall be made a party to the proceeding. Even though the acts of abuse or neglect alleged in the petition were not directed against a specific child who is named in the petition, the court shall order the removal of such child, pending final disposition, if it finds that there exists imminent danger to the physical well-being of the child and a lack of reasonable available alternatives to removal. The initial order directing such custody shall contain an order appointing counsel and scheduling the preliminary hearing, and upon its service shall require the immediate transfer of custody of such child or children to the department or a responsible relative which may include any parent, guardian, or other custodian. The court order shall state: (1) That continuation in the home is contrary to the best interests of the child and why; and (2) whether or not the department made reasonable efforts to preserve the family and prevent the placement or that the emergency situation made such efforts unreasonable or impossible. The order may also direct any party or the department to initiate or become involved in services to facilitate reunification of the family.

before a court may grant the Department the authority to take emergency, temporary custody of a child.

In our earlier opinion in this case, we stated that when a prior involuntary termination of parental rights to a sibling has occurred, the Department's "minimum threshold of evidence necessary for termination" is reduced. We held, in Syllabus Point 2 of *In re George Glen B., Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999):

> Where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present.

Furthermore, we also held in our prior decision in this case that, when the Department brings a petition to terminate parental rights based solely upon the prior involuntary termination of parental rights of a sibling, the circuit court must allow the parties to develop any evidence regarding the actions taken by the parent or parents to alleviate the conditions surrounding the prior termination. We stated, at Syllabus Point 4:

> When an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § 49-6-5b(a)(3) (1998), prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

Having closely examined the language used by the Legislature in *W.Va.Code,* 49-6-5b(a)(3), we do not believe that the Legislature intended to eliminate the Department's burden of proving the presence of current or imminent abuse or neglect of a child when the parental rights to a sibling have been previously involuntarily terminated, and our previous holding in *George Glen B.* should not be construed as eliminating the Department's burden of proof. We also do not believe that the Legislature intended to eliminate the circuit court's discretion over whether or not to terminate a party's parental rights. The presence of one of the factors outlined in *W.Va.Code,* 49-6-5b(a)(3) merely lowers the threshold of evidence necessary for the termination of parental rights. *W.Va. Code,* 49-6-5b(a)(3) does not mandate that a circuit court terminate parental rights merely upon the filing of a petition filed pursuant to the statute, and the Department continues to bear the burden of proving that the subject child is abused or neglected pursuant to *W.Va.Code,* 49-6-2.

Having carefully examined the extensive record and testimony in this case, we conclude that the Department properly filed the instant action to investigate and develop evidence regarding whether the appellee parents had alleviated the conditions surrounding the prior terminations of their parental rights to George's siblings. However, we also find substantial evidence that the appellees have remedied the circumstances which prompted the filing of the previous two abuse and neglect petitions. We therefore conclude that the circuit court did not err in finding that the appellees had corrected the conditions leading to the prior terminations of parental rights. The circuit court was therefore correct in holding that, because of the absence of any evidence of current or threatened abuse or neglect, George should be returned to his parents' custody.

B.

*Delegation of Duties to a Private Agency*

In its orders, the circuit court concluded that the Department "has become so emo-

tionally involved in this case that they cannot be objective," and criticized the Department for "want[ing] to terminate parental rights or do nothing." To address this problem, the circuit court delegated responsibility to a private agency, Action Youth Care, to establish and carry out a plan for reunifying George with the appellee parents.[4]

The Department appeals the circuit court's orders contending that our abuse and neglect statutes, *W.Va.Code*, 49-6-1, *et seq.*, place any decisions about the safety of at-risk children solely within the discretion of the circuit court once a petition has been filed. The Department argues that the circuit court cannot delegate that authority to another agency, particularly a private company. We agree.

This Court has repeatedly stated that when a petition alleging abuse and neglect has been filed, a circuit court has a duty to safeguard the child and provide for his or her best interests. *See, e.g., State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 257-58, 496 S.E.2d 198, 207-8 (1997) (circuit courts have an obligation to consider the "best interests of the child [as] paramount," and a circuit court "cannot . . . ignore its parens patriae duty to protect the best interests of [the child]."). Furthermore, circuit courts are statutorily charged with promptly ruling upon the merits of an abuse and neglect petition, *W.Va. Code*, 49-6-2 [1996], and if abuse or neglect is found, crafting a disposition to achieve an appropriate placement of an abused and/or neglected child. *W.Va.Code*, 49-6-5 [1998].

In the instant case, the circuit court concluded that George could be at risk if quickly returned to the custody of his parents, and determined that a gradual transition period was needed to give George, and the appellees, a sufficient "adjustment" period. We have previously approved of gradual changes in the custody of children. For example, in

*Honaker v. Burnside*, 182 W.Va. 448, 450-51, 388 S.E.2d 322, 324 (1989), a case where there were no allegations of abuse or neglect, we approved of a gradual, 6-month transition of custody of a child between her step-father and natural father when the child's natural mother had died.

Similarly, in *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991), we required the circuit court to establish a plan for the gradual shift of custody for children found to be abused and neglected to their natural father. We held, at Syllabus Point 3, that:

> It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.

Explicit in both *Honaker v. Burnside* and *James M. v. Maynard* is the principle that the circuit court, and not the Department or a private agency, bears the burden of crafting a plan for the gradual transition of custody.

We therefore hold that when a circuit court determines that a gradual change in permanent custodians is necessary, the circuit court may not delegate to a private institution its duty to develop and monitor any plan for the gradual transition of custody of the child(ren).[5]

Accordingly, we find that the circuit court erred in delegating to Action Youth Care all responsibility regarding the reunification of George with his parents, and re-

---

4. As the circuit court stated in its August 30, 1999 order:

    Action Youth Care shall be the controlling agency in carrying out the transition of the infant from DHHR custody to the parents' custody. If there are any difference of opinion or disagreement as to appropriate treatment of the infant between DHHR and Action Youth

Care, the Action Youth Care's position shall prevail.

5. Nothing prevents a circuit court from requiring an agency to submit a proposed reunification plan for the circuit court's consideration. However, the circuit court is charged with adopting and monitoring the implementation of such a proposed plan.

verse the circuit court's orders on this point. On remand, the circuit court must establish a concrete transition plan for reunification, and must oversee the execution of that plan.[6]

## C.

### Procedural Questions

The Department challenges the circuit court's *de facto* granting of an improvement period to the appellee parents, arguing that an improvement period may be granted only after a party makes a motion for an improvement period. *See W.Va.Code,* 49–6–2(b) [1996]. The Department contends that the appellees never asked for an improvement period. Furthermore, the Department contends that the *de facto* improvement period is not being conducted in accordance with a family case plan[7] developed by the Department, because none was created.

■ In our examination of *W.Va.Code,* 49–6–5 [1998], we find that the right of a parent to an improvement period, and the Department's duty to create a case plan governing that improvement period, only arises *after* the circuit court has determined that a child has been abused or neglected. *W.Va. Code,* 49–6–5(a) states, in pertinent part:

> Following a determination ... wherein the court finds a child to be abused or neglected, the department shall file with the court a copy of the child's case plan, including the permanency plan for the child. The term case plan means a written document that includes, where applicable, the requirements of the family case plan....

■ In the instant case, the circuit court specifically found no evidence of abuse or neglect by the appellees against George. Accordingly, there was no need for the creation of a case plan by the Department, nor a

need for a formal improvement period. We therefore find no error on this point by the circuit court. However, as we previously discussed, the circuit court properly acted within its discretion in allowing for a gradual transition of custody and reunification of George with his parents. *See* Syllabus Point 3, *James M. v. Maynard,* discussed *supra.*

The Department also challenges the circuit court's failure to hold a final adjudicatory hearing within 30 days of the July 28–29, 1999 preliminary hearing.

■ Rule 25 of the *Rules of Procedure for Child Abuse and Neglect* [1997] requires circuit courts to hold an adjudicatory hearing within 30 days of any temporary custody order entered following the preliminary hearing. The rule states, in pertinent part:

> When a child is placed in the temporary custody of the Department or a responsible person ... the final adjudicatory hearing shall commence within thirty (30) days of the temporary custody order entered following the preliminary hearing and must be given priority on the docket unless a preadjudicatory improvement period has been ordered....

In the instant case, the circuit court entered orders on August 5 and August 30, 1999 placing George in the temporary custody of the Department (but, as previously mentioned, gave Action Youth Care complete authority over George's reunification with his parents). Rule 25 of the *Rules of Procedure for Child Abuse and Neglect* mandates that a hearing should have occurred no later than 30 days after the August 30, 1999 order. However, the circuit court stated, in its orders, that it would "set an adjudicatory hearing within 90 days to determine what future proceedings are needed." This ruling, as well as the circuit court's failure to hold an

---

**6.** We conclude, however, that the circuit court retains discretion in establishing how the plan will be carried out, and what agencies will act as intermediaries.

The Department argues that the circuit court erred in finding that the Department was prejudiced against the parents, and argues that the Department, and not a private agency, should retain the authority to oversee any reunification efforts. However, after examining the record, we cannot conclude that the circuit court abused

its discretion in removing the Department from the oversight of George's welfare.

**7.** A family case plan provides the parties with an organized, realistic means of identifying family problems and the steps to be used in resolving or lessening the problems. The Department creates a family case plan only after the circuit court grants the parent(s) an improvement period. *See, e.g., W.Va.Code,* 49–6–5 [1998]; *State ex rel. DHHR v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181 (1987).

adjudicatory hearing by September 30, 1999, was in error.

Accordingly, we reverse the circuit court's finding that it was authorized to schedule a hearing 90 days after its order upon the preliminary hearing, and remand the case for further proceedings. We direct that, on remand, the circuit court is to act immediately to develop and oversee a plan for the expeditious reunification of George with his parents.

## IV.

### *Conclusion*

As set forth above, we affirm in part and reverse in part the circuit court's August 5 and August 30, 1999 orders. On remand, we direct that the circuit court act immediately to develop and oversee a concrete plan for the expeditious reunification of George with his parents.

Affirmed in part, Reversed in part, and Remanded.