No. 12-1138 - In Re: Timber M. And Reuben M.

Workman, Justice, concurring:

I concur in the Court's disposition of all issues relating to Norma G., the children's mother, who has demonstrated both by her words and her actions that she is unwilling and unable to acknowledge her culpability in this matter, unwilling and unable to accept services from DHHR,[1] and unwilling and unable to protect the children in the future. I write separately to express my wholehearted support of the Court's adoption of syllabus point six, which is consistent with our precedents but is now expressly adjudicated and "prefixed to the published report of the case" as set forth in Article Eight, Section 4 of the West Virginia Constitution. Justice Loughry, writing for the majority, has done a great service for the children of West Virginia by clarifying that it is *always* a court's duty to protect children who are before the court.

As painstakingly detailed in the Court's opinion, the record in this case indicates that

---

[1]Given the finite resources available to state agencies to fulfill their mission of assisting families in crisis, the suggestion that Norma G. should be provided a law-trained mediator to cajole her into accepting services from DHHR, or that agency workers from another county should be pulled into her case because she doesn't "like" or "trust" the workers in Greenbrier County, is frankly absurd. Norma G. was afforded a full panoply of procedural rights throughout these proceedings, and was further offered an array of services that might have enabled her to achieve the goal of unification with her children. She declined to accept the services because she deemed them unnecessary.

1

Kevin M. has been accused on multiple occasions of sexually-based offenses against minor children. Giving him the benefit of the doubt, as DHHR investigators did at the time, it may be inferred from the record that at least some of the charges, filed by Norma G. during the pendency of the couple's custody dispute, may have been bogus.[2] Others, according to Norma G.'s testimony in these proceedings, although instituted by her against Kevin M. involved incidents that she now believes to have been perpetrated by unnamed "others" in Kevin's household.[3]

Even putting aside the charges filed by Norma G. against Kevin M., the record in this case contains alarming information about other charges against Kevin G. that cannot be readily dismissed as bogus or otherwise groundless. As detailed in the Court's opinion, in February 2, 2010, Kevin M. was indicted by a grand jury on multiple charges of sexual assault and intrusion involving his then-stepdaughter, M.B., who was twelve years old at the time. *State v. Kevin Dale M*., Case No. 10-F-6. On December 22, 2011, the indictment was dismissed on motion of the prosecutor, who stated the following as grounds for his action:

---

[2]During the pendency of the parties' custody proceedings, and as part of what CPS termed an "ongoing custody battle," Norma G. instituted or caused to be instituted twelve investigations into allegations that Kevin M. sexually abused Timber M., beat one or both of the children, and allowed the children's head lice to go untreated. In each instance, DHHR investigated and determined that the allegations made against Kevin M. were "not substantiated."

[3]This, of course, begs the question of what Kevin M. was doing while the unnamed others in his household were sexually abusing his children.

2

"because the State no longer wishes to prosecute." On that same date, DHHR filed a petition, and then an amended petition, for temporary custody of Timber M. and Reuben M. In the original petition, DHHR sought temporary placement of the children with their paternal uncle, indicating that it was looking at placement with Kevin M. "upon further assessment of criminal charges." In the amended petition, DHHR clarified that the charges against Kevin M. had been dismissed due to "the victim not wishing the matter to proceed further, and due to certain other considerations of the Prosecuting Attorney's office."[4] In the amended petition, DHHR also alleged that Kevin G. was minimizing Norma G.'s culpability in the abuse and neglect matter, despite having first-hand knowledge that Norma G. had left the children with their stepfather, Jack G., after knowing that Jack G. was exposing himself to Timber M. and showing her pornographic materials.[5]

During the eight-month period in which the abuse and neglect proceedings against Norma G. were litigated, all of the social summary notes and case report notes indicate that Kevin M. continued to minimize Norma G.'s culpability and therefore "would not [be expected to] play a protective role" with respect to the children. Additionally, the notes indicate that although Kevin M. wanted visitation, and was amenable to services, he did not

[4]The record is silent as to what these "certain other considerations" might be.

[5]All of the information in the appendix record indicates that after the conclusion of the custody proceedings between Norma G. and Kevin M., the two became "quite friendly" and often went hunting together – including hunting trips taken during the four-month period in which Norma G. allowed Jack G. to continue living with her and the children.

3

want custody. Finally, and most significantly, the notes indicate that although the criminal charges against Kevin M. had been dismissed because the victim, M.B., did not want to proceed with the case, *M.B. had never recanted her allegations against Kevin M*.

Thereafter, the appendix record is completely silent with respect to a key question: why, with the children by all accounts doing well in a foster placement, did the DHHR reverse course and recommend that Kevin M. be given custody of Timber M. and Reuben M.? As noted in the majority opinion, the appendix record submitted to this Court contains no information indicating that anyone talked to either the prosecuting attorney or the victim in *State v. Kevin Dale M*., or reviewed the discovery in that case, or otherwise made any attempt to ascertain the "certain other considerations" that led to the case being dismissed two years after it was instituted. See text *supra*. Further, although there might be information in the Case Plan on this critical issue – one would hope, given the requirements of the law that a multidisciplinary treatment team consider every aspect of a case[6] – that document is, again, not contained in the appendix record. Finally, nothing in the circuit court's disposition order of August 14, 2012, gives any hint as to when, why, or on what

---

[6]*See* W. Va. Code § 49-6-5, "Disposition of neglected or abused children"; W. Va. Code § 49-6D-3, "Unified child and family case plans"; and Rule 28 of the West Virginia Rules of Procedure for Child Abuse and Neglect, "Disposition report by Department – The child's case plan; contents of the child's case plan."

basis the court became "comfortable" with the decision to give Kevin M. custody of the children.[7]

Although none of the parties to this case raised the issue of placement, this Court has both the right and the duty to address it. As the Court's opinion notes, both Rule 2 of the West Virginia Rules of Appellate Procedure and Rule 2 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings codify the Court's authority to suspend rules, and/or to liberally construe them, the former rule for the general purpose of "do[ing] substantial justice" and the latter rule for the specific purpose of "achiev[ing] safe, stable, secure permanent homes for abused and/or neglected children[.]" And as the Court's opinion also notes, we have not hesitated in the past to address issues sua sponte in cases involving the welfare of children. *See In re K.R.*, 229 W. Va. 733, __ n.23, 735 S.E.2d 882, 893 n.23 (2012) "[I]t is within the authority of this Court to 'sua sponte, in the interest of justice, notice plain error.'" (Internal citations omitted.)

I cannot conceive of a case more appropriate for the exercise of our authority to notice plain error "in the interest of justice" than one in which children may in danger as a result of

---

[7]At oral argument, it was suggested by counsel for DHHR that because the agency couldn't "prove" the charges against Kevin M., that was the end of the matter. Again, with no indication that anyone in this case has ever spoken to M.B., spoken to the prosecuting attorney, or reviewed the discovery in the criminal case, this excuse rings hollow.

5

an inappropriate placement. We have consistently held that in matters involving abused and neglected children, the "polar star test [is] looking to the best interests of our children and their right to healthy, happy productive lives[.]" *In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001); *see Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children."); *In re George Glen B. Jr.*, 207 W. Va. 346, 355, 532 S.E.2d 64, 73 (2000) ("[W]hen a petition alleging abuse and neglect has been filed, a circuit court has a duty to safeguard the child and provide for his or her best interests."). In reviewing the record submitted to this Court, which contains a significant evidentiary gap, four members of this Court are left with the definite and firm conviction that no one in the proceedings below adequately developed the issue of Kevin M.'s fitness to have custody of Timber M. and Reuben M. *Cf.* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) ("A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). The dissenting justice, although expressing reservations as to the Court's adoption of syllabus point six, concurs in the Court's decision to vacate and remand for further proceedings on the custody issue.

The dissenting justice takes issue with the Court's recitation of the facts about accusations made against Kevin M. when Kevin M. is not a party to this appeal and "did not

have the opportunity to address the majority's concerns[.]" This begs the question: why was Kevin M. dismissed from the proceedings below?[8] It further assumes that this Court has adjudicated Kevin M.'s rights, which is not the case; we have vacated and remanded for further proceedings. If the circuit court is correct that Kevin M. is a fit and proper custodian for Timber and Reuben, then the remand proceedings will allow the parties to make a record, and the court to make specific findings, to support the court's conclusion.

Additionally, the dissenting justice expresses concern that syllabus point six of the Court's opinion is overly broad and "serves as an invitation to this Court to disregard long-settled standards of review." In my view, this concern is unfounded. First, our rules not only permit but in fact *require* that in abuse and neglect appeals, "[w]ithin one week of any oral argument . . . the parties shall provide a written statement of any change in the circumstances that were set forth in the briefs." W. Va. R. App. P. 11(j).[9] Second, it is well established in our jurisprudence that in cases involving the welfare of children, we may "*sua sponte* address

---

[8]Consistent with the complete "information gap"in the record of these proceedings with respect to Kevin M., information in the file indicates that he was dismissed from the case prior to the final hearing but there is no circuit court order to that effect.

[9]Indeed, in an Administrative Order entered on December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Ketchum specifically noted in paragraph 12 that "[b]riefs by all parties in abuse and neglect cases that do not set forth the information about the current status of the child that is required by Rule 11(j)" are not in compliance with this Court's rules.

an issue of particular concern to this Court."[10]  Third, the issue of Kevin M.'s fitness fairly leaps off the face of the record in this case; whether or not the issue was raised by the parties, it permeates these proceedings.[11]  For these reasons, I am unwilling to accept the proposition that because of a speculative concern about what could happen in some other case at some other time, this Court should passively accept the distinct possibility of harm to the children in this case.  Timber M. and Reuben M. deserve more, and this Court's adoption of syllabus point six makes it clear that the interests of children are, and will always be, the "polar star" in abuse and neglect proceedings.

Accordingly, I concur in the Court's judgment.

---

[10]*In re Jonathan Michael D*., 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995).  The Court's opinion cites *Jonathan Michael D*. and a number of other cases standing for this proposition.

[11]In this regard, this case is completely different from *Mowery v. Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971), *Shackleford v. Catlett*, 161 W. Va. 568, 244 S.E.2d 327 (1978), and *Voelker v. Frederick Business Properties Co.*, 195 W. Va. 246, 465 S.E.2d 246 (1995), all of which held, in syllabus points one, one and three, respectively, that "[i]n the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken."  This statement describes the Court's general practice, not the ambit of the Court's constitutional authority.  Indeed, nothing in the text of these cases suggests, let alone compels, the conclusion that this Court is prohibited from noticing plain error, or raising an issue sua sponte, in the interest of justice.  The dissenting justice concedes as much.  And as noted earlier, this Court is not deciding the issue of Kevin M.'s fitness to have custody of the children; rather, we are requiring the parties to make a record sufficient to permit the circuit court to make findings of fact and conclusions of law in the first instance.