## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**IN RE: K.B., B.B., AND N.B.**

**No. 14-0900**  (Calhoun County 14-JA-12, 14-JA-13, 14-JA-14)

**FILED**

**September 24, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

The petitioner, R.B.,[1] by counsel Ryan M. Ruth, appeals two orders of the Circuit Court of Calhoun County:  the amended order adjudicating him as an abusing parent to his minor children K.B., B.B., and N.B.; and the disposition order denying his motion for an improvement period and terminating his parental rights to these children.[2]  The respondent West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, and the respondent guardian *ad litem*, Erica Brannon Gunn, filed response briefs. The Court heard oral arguments on this case on September 2, 2015.

After a careful review of the appendix record submitted on appeal, the written and oral arguments of counsel, and the applicable precedent, this Court determines that the circuit court erred by adjudicating the petitioner as an abusing parent based solely upon the prior involuntary termination of his rights to a different child.  Because our decision in this matter is dictated by well-settled law, we conclude that this case satisfies the "limited circumstances" provision in Rule 21(d) of the Rules of Appellate Procedure for reversal and remand in a memorandum decision.

### I.  Factual and Procedural Background

The petitioner is the biological father of minor children K.B., B.B., and N.B.  In February of 2014, the children, who were then between the ages of two and four years old, resided in Calhoun County, West Virginia, with their biological mother, C.R., and C.R.'s

---

[1]Because this case involves children and sensitive matters, we follow our practice of using initials to refer to the children and their parents.  *See* W.Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

[2]An amended adjudication order, correcting a factual mistake made in an earlier version of the order, was filed with the circuit clerk on November 14, 2014.  The disposition order was filed on August 13, 2014.

1

boyfriend, N.A.B. The two-month-old twins of C.R. and N.A.B. also resided in the home. The petitioner was a resident of Orrville, Ohio.

On February 26, 2014, the DHHR initiated this child abuse and neglect case by filing a petition in the circuit court alleging that N.A.B. sexually abused K.B.; coached K.B. not to disclose the abuse; physically abused one or more of the children by inappropriately disciplining them with a belt; and on or about the week of February 19, 2014, left belt marks on B.B. In addition, the DHHR alleged that C.R. failed to protect the children from N.A.B.'s abuse and coached K.B. not to disclose the sexual abuse. Finally, the DHHR alleged that the petitioner, R.B., had knowledge of the abuse as of February 22, 2014, but took no action to protect the children, and that he had abandoned his children. Subsequently, on March 31, 2014, the DHHR amended its abuse and neglect petition to include an additional allegation, specifically, that the petitioner's parental rights to another child were previously terminated involuntarily.

On April 2, 2014, the circuit court held an adjudicatory hearing to determine whether the adult respondents abused or neglected the children. *See* W.Va. Code § 49-6-2(c) (2014) (directing that at conclusion of hearing, court shall make findings of fact and conclusions of law as to whether child is abused or neglected).[3] With regard to the allegations against him, the petitioner admitted that his parental rights to his son, M.N., were involuntarily terminated in 2010. He explained that this termination had been the result of his failure to complete an improvement period after M.N., a teenager, was sent to a juvenile detention facility. The petitioner said he saw no reason to complete the improvement period because M.N. was not going to be released until after he turned eighteen years old, at which time M.N. would no longer be the subject of a child abuse and neglect proceeding.

The petitioner denied ever abusing or neglecting K.B., B.B., or N.B. Contrary to the DHHR's allegation of abandonment, there was evidence that the petitioner had cared for these children for approximately two weeks while C.R. was hospitalized prior to the birth of her twins. The petitioner testified to his attempts to remain in contact with the children after he and C.R. ended their relationship and C.R. moved with the children to West Virginia. Moreover, he denied knowingly failing to protect the children from N.A.B.'s abuse. He testified that he was unaware of N.A.B.'s actions until he was advised by a third party and,

---

[3]During its 2015 Regular Session, the West Virginia Legislature repealed West Virginia Code §§ 49-1-1 through 49-11-10 and recodified these statutes, with revisions that do not impact this case, into West Virginia Code §§ 49-1-101 through 49-7-304. The references in this opinion are to the statutes as they existed during the pendency of the proceedings below.

upon first hearing the allegations, he immediately traveled to Calhoun County to check on his children. The petitioner testified that he made inquiries to C.R., who told him the DHHR was already investigating the allegations, K.B. had undergone a medical examination, and the examination had found no evidence of sexual abuse.

At the conclusion of the adjudicatory hearing, the circuit court ruled that there was not clear and convincing evidence to prove that the petitioner had either abandoned or failed to protect K.B., B.B., and N.B. However, the circuit court adjudicated the petitioner as an abusing parent with regard to these children solely because his parental rights to M.N. had been involuntarily terminated.

Thereafter, the petitioner filed a motion seeking a post-adjudicatory improvement period, and the matter proceeded to a dispositional hearing. *See* W.Va. Code § 49-6-5 (2014) (providing for disposition after court determines child was abused or neglected). After hearing additional evidence, the circuit court denied the motion for an improvement period. The court found that the petitioner failed to demonstrate that his circumstances had substantially changed since his prior involuntary termination and there was no reasonable likelihood the conditions of abuse or neglect could be substantially corrected in the near future. Accordingly, the circuit court terminated the petitioner's parental rights to K.B., B.B., and N.B.[4]

## II. Standard of Review

We consider abuse and neglect appeals under a compound standard of review. Conclusions of law are subject to a de novo review, while findings of fact are weighed against a clearly erroneous standard. *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000); Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). With these precepts in mind, we turn to the parties' arguments.

---

[4]During the adjudicatory hearing, N.A.B. voluntarily relinquished his parental rights to all of the children, including his infant twins and an older child born to a different mother. As a result, N.A.B. was dismissed from the abuse and neglect proceeding. C.R. admitted that she had failed to protect the children from N.A.B.'s abuse, including by allowing N.A.B. to remain in the home after the sexual abuse was revealed, and that she had questioned K.B. in such a way as to delay the child's disclosure. The circuit court adjudicated C.R. as an abusing parent and ultimately terminated her parental rights to her children. The circuit court's rulings regarding C.R. have already been affirmed by this Court. *In re K.B., B.B., N.B., P.B. & S.B.*, No. 14-0910 (W.Va. Supreme Court, May 18, 2015) (memorandum decision).

## III.  Discussion

The petitioner argues that the circuit court erred as a matter of law by adjudicating him as an abusing parent based entirely upon the fact that his rights to a different child were previously involuntarily terminated, without making any findings of fact or conclusions of law that he abused or neglected K.B., B.B., or N.B.

We begin our analysis by recognizing that the DHHR raised the issue of the petitioner's prior involuntary termination pursuant to West Virginia Code § 49-6-5b(a)(3) (2014), which provides, in relevant part, that ". . . the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: . . . If . . . the parental rights of the parent to a sibling have been terminated involuntarily."[5] We have held that "[w]hen the parental rights of a parent to a child have been involuntarily terminated, W.Va. Code, 49–6–5b(a)(3) [1998] requires the Department of Health and Human Resources to file a petition, to join in a petition, or to otherwise seek a ruling in any pending proceeding, to terminate parental rights as to any sibling(s) of that child."  Syl. Pt. 1, *In re George Glen B.*, *Jr.*, 207 W.Va. 346, 532 S.E.2d 64 (2000) *(George Glen B. II).*[6]

However, by enacting West Virginia Code § 49-6-5b(a)(3), the Legislature did not "intend[] to eliminate the Department's burden of proving the presence of current or imminent abuse or neglect of a child when the parental rights to a sibling have been previously involuntarily terminated[.]"  *George Glen B. II* at 354, 532 S.E.2d at 72.  We explained the DHHR's burden as follows:

> While the Department of Health and Human Resources has a duty to file, join or participate in proceedings to terminate parental rights in the circumstances listed in W.Va. Code, 49-6-5b(a)(3) [1998], the *Department must still comply with the evidentiary standards established by the Legislature in W.Va. Code, 49-6-2 [1996]* before a court may terminate parental rights to a child, and must comply with the evidentiary standards established in W.Va. Code, 49-6-3 [1998] before a court may grant the Department the authority to take emergency, temporary custody of a child.

---

[5]This statute, with some minor wording changes that do not impact the issues before us, is now codified at West Virginia Code § 49-4-605(a) (2015).

[6]*In re George Glen B. Jr.* was appealed to this Court on two separate occasions.  We will refer to the opinion issued in 1999, *In re George Glen B. Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999), as *George Glen B. I.*  The opinion issued in 2000 is cited as *George Glen B. II*.

*Id.* at 349, 532 S.E.2d at 67, syl. pt. 2 (emphasis added).  Additionally,

> [t]he presence of one of the factors outlined in W.Va. Code, 49-6-5b(a)(3) [1998] merely lowers the threshold of evidence necessary for the termination of parental rights.  W.Va. Code, 49-6-5b(a)(3) [1998] does not mandate that a circuit court terminate parental rights merely upon the filing of a petition filed pursuant to the statute, and *the Department of Health and Human Resources continues to bear the burden of proving that the subject child is abused or neglected pursuant to W.Va. Code, 49-6-2 [1996].*

*Id.*, syl. pt. 5 (emphasis added).  West Virginia Code § 49-6-2, as is referenced in these syllabus points, is the statute pertaining to the circuit court's adjudication of the parent as abusing and the child as abused or neglected.  It provides, in pertinent part, that

> [a]t the conclusion of the [adjudicatory] hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

W.Va. Code § 49-6-2(c).

We revisited this area of the law in *In re K.L.*, 233 W.Va. 547, 759 S.E.2d 778 (2014), a case where the circuit court erroneously shifted the burden of proof to the parent to show a change in circumstances in the time since her rights to a different child were involuntarily terminated.  When remanding *In re K.L.* to the circuit court, we specified what the DHHR had to prove upon going forward with a petition filed pursuant to § 49-6-5b(a)(3):

> [T]he burden remains with the DHHR to show by clear and convincing evidence that the petitioner committed abuse and/or neglect of K.L. in addition to showing the previous termination of the petitioner's parental rights to a sibling of K.L.  As noted above, the DHHR's petition against the petitioner was based solely on the prior involuntary termination, without further allegations.  There must be specific allegations and evidence of abuse or neglect of K.L., which could include demonstrating that K.L. was abused and/or neglected by showing the petitioner failed to correct the conditions that led to the prior termination of her parental rights and/or that other circumstances exist which would establish abuse and/or neglect.

5

*K.L.* at 554, 759 S.E.2d at 785.[7]

In the case at bar, the record reveals that the circuit court erroneously adjudicated the petitioner as abusing without making any findings of fact or conclusions of law pertaining to any abuse or neglect that the petitioner may have inflicted upon K.B., B.B., or N.B. Acting under an apparent misapprehension of the law, the court adjudicated the petitioner as abusing solely because of the prior involuntary termination of parental rights. While evidence may exist showing that the petitioner abused or neglected these three children, the adjudication order simply does not contain any analysis or make any findings to support such a conclusion.[8] The DHHR has properly conceded that the adjudication, under these circumstances, was in error.

Conversely, the guardian *ad litem* contends that there was no error. According to the guardian *ad litem*, it was sufficient that during the *disposition* phase of this proceeding the circuit court made findings of fact regarding the petitioner's history of involvement with child welfare agencies, the petitioner's failure to comply with the improvement period in M.N.'s case, and other evidence critical of the petitioner. Certainly, this type of evidence should be taken into account when ruling on a motion for an improvement period and deciding on a disposition. *See*, *George Glen B. I.* at 437, 518 S.E.2d at 865, syl. pt. 4. However, considering such evidence at disposition does not cure the erroneous adjudication. When pursuing a § 49-6-5b(a)(3) petition, "the Department must still comply with the evidentiary standards established by the Legislature in [the adjudication statute,] W.Va. Code, 49–6–2 [1996][.]" *George Glen B. II* at 349, 532 S.E.2d at 67, syl. pt. 2, in part. Similarly, the DHHR "continues to bear the burden of proving that the subject child is abused or neglected pursuant to W.Va. Code, 49–6–2 [1996]." *Id.* at syl. pt. 5, in part. A circuit

---

[7]The circuit court herein did not have the benefit of *In re K.L.* when it adjudicated the petitioner. The petitioner's adjudication hearing was held in April of 2014, while *In re K.L.* was not decided until June of 2014.

[8]As explained in *In re K.L*, a sufficient showing of abuse and neglect may be made if the DHHR proves that the parent failed to correct the conditions that led to his or her prior involuntary termination. 233 W.Va. at 554, 759 S.E.2d at 785; *accord George Glen B. I.* at 437, 518 S.E.2d at 865, syl. pt. 2, in part (stating that "[w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at a minimum, be reviewed by a court[.]") However, the circuit court's adjudicatory order in the instant case did not address whether the petitioner corrected the conditions that led to the prior termination. Indeed, the court did not even specify the nature of the abuse and/or neglect that the petitioner inflicted upon M.N.

court must adjudicate the subject child as abused or neglected before it can begin to address the issue of disposition:

> "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49–6–5, it must hold a hearing under W.Va. Code, 49–6–2, and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syl. Pt. 1, *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685 (1983).

*George Glen B. I* at 437-38, 518 S.E.2d at 865-66, syl. pt. 6.

## IV. Conclusion

Having concluded that the circuit court erred as a matter of law when adjudicating the petitioner as an abusing parent with respect to K.B., B.B., and N.B. based solely upon the prior involuntary termination of his rights to a different child, without making any findings of fact and conclusions of law to support that he abused and/or neglected these three children, we reverse the adjudication and remand this case for further proceedings consistent with this memorandum decision. As a result of the erroneous adjudication, we must necessarily set aside the disposition that followed from that adjudication.[9] However, only the portions of the circuit court's adjudication and disposition orders that pertain to the petitioner are reversed and remanded; the portions of these orders pertaining to C.R. and N.A.B. are unaffected.

Because the DHHR and the circuit court misapprehended the requirements of proving a petition filed pursuant to West Virginia Code § 49-6-5b(a)(3), and because the DHHR has a statutory obligation to file or join in such a petition when there has been a prior involuntary termination, we conclude that it is in the best interests of the children to remand this case for an amended abuse and neglect petition and a new adjudicatory hearing. The DHHR is hereby ordered to file an amended abuse and neglect petition asserting its basis for alleging that the petitioner has abused and/or neglected these three children–whether it be the failure to

---

[9]Because the adjudication issue is dispositive of this appeal, we decline to address the petitioner's remaining assignments of error, other than to emphasize one additional point. The petitioner contends that when terminating his parental rights at disposition, the circuit court erroneously shifted the burden of proof to him to prove a change in circumstances since his prior termination. We draw the parties' and the circuit court's attention to our discussion of unconstitutional burden shifting in *In re K.L.*, 233 W.Va. at 553, 759 S.E.2d at 784.

correct the circumstances that led to the prior involuntary termination or some other reason.[10] The DHHR's amended abuse and neglect petition shall be filed with the circuit court within sixty days of the issuance of this memorandum decision.[11] Thereafter, the circuit court shall proceed on the amended petition in accordance with the abuse and neglect statutes and the law set forth herein.[12] Finally, the Clerk of this Court is directed to issue the mandate order contemporaneously with this memorandum decision.

**Reversed, in part,[13] and remanded with directions.**

**ISSUED:** September 24, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[10]The DHHR and guardian *ad litem* indicate that after the disposition order was entered, the children revealed specific instances of abuse by the petitioner. Such allegations may be included in the amended abuse and neglect petition.

[11]*See* Syl. Pt. 5, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991) (stating that matters involving abuse and neglect of children shall take precedence and must be resolved as expeditiously as possible).

[12]During the pendency of the proceedings on remand, the children shall remain in their current placements outside of the petitioner's home unless the circuit court orders otherwise.

[13]This reversal is "in part" because the portions of the orders pertaining to C.R. and N.A.B. are not reversed.