No. 23-339 – *In re K.V.*

**FILED**

**March 26, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ARMSTEAD, Justice, dissenting:**

In its opinion, the majority begins its discussion of the facts by recognizing that petitioner's parental rights to her seven older children were involuntarily terminated in 2014. The majority then relates that during a September 9, 2022 psychological evaluation, petitioner "refused to answer questions about the children to whom she no longer had parental rights" and exhibited a "'poor' prognosis for the reliable future attainment of minimally adequate parenting." Next, the majority notes that the child protective services worker assigned to petitioner's case testified that petitioner refused to acknowledge the abuse and neglect that occurred not only in her previous case but in the current proceeding as well. This Court has made clear that "in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making the problem untreatable[.]" *W. Va. Dep't of Health & Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 498, 475 S.E.2d 865, 874 (1996). In these circumstances, there is no reasonable likelihood that the conditions of abuse and neglect can be corrected in the near future and pursuant to West Virginia Code §49-4-604(c)(6) (2020), termination of parental rights is required. Instead of applying our well-established law and affirming the circuit court's order, the majority hinged its decision upon a finding that the circuit court impermissibly shifted the burden of proof to petitioner.

1

Notwithstanding the fact that petitioner did not assign error to the circuit court's decision on that basis,[1] even if any burden-shifting actually occurred, it was harmless because DHS presented overwhelming evidence at the disposition hearing showing petitioner's failure to acknowledge the abuse and neglect. Moreover, her refusal to treat her mental health issues threatened the health and welfare of K.V. Therefore, I would have affirmed the circuit court's order terminating petitioner's parental rights.

In reaching the conclusion that this case must be remanded for another disposition hearing, the majority conflated the evidentiary burden of proof that applies to DHS with the duty of compliance that is always upon a parent who has been granted an improvement period. Certainly, even in cases that are initiated pursuant to West Virginia Code § 49-4-605(a)(3) (2018), "the [DHS] continues to bear the burden of proving that the subject child is abused and neglected pursuant to W.Va. Code, 49-6-2 [1996] [now West Virginia Code 49-4-601 (2019)]." Syl. Pt. 5, in part, *In re George B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000). However, as this Court has made clear:

> DHS is not obligated . . . to prove its case by showing that [the parent] failed to comply with the family case plan. In Syllabus Point 1 of *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981), we held:
>
> > "W.Va.Code, [49-4-601], requires the State Department of Welfare [now the Department of

---

[1] Generally, assignments of error that are not asserted on appeal are deemed waived by this Court. Syl. Pt. 7, *Birchfield v. Zen's Development, LLC*, 245 W. Va. 82, 857 S.E.2d 422 (2021). Because petitioner did not raise this issue, there was no basis for this Court to address it, but the majority decision proceeds to do so without providing one.

Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden."

*W.Va. Dep't of Human Services v. Peggy F*. 184 W. Va. 60, 63-64, 399 S.E.2d 460, 463-64 (1990). While DHS maintains the burden of proof to establish that the parent has abused and/or neglected the child, where as here, a parent is granted an improvement period, such parent "shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A) (2015). Holding petitioner to her statutory obligation does not result in shifting the burden to her.

At the disposition stage, "West Virginia Code § 49-6-5(a)(6) (1988) [now West Virginia Code § 49-4-604(c)(6) (2020)] governs the procedure for termination of rights and unequivocally states that a parent's rights may be terminated '[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child . . . .'" *In re Carlita B.,* 185 W. Va. 613, 624, 408 S.E.2d 365, 376 (1991). In determining whether parental rights should be terminated, this Court has held:

At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

*Id.*, 185 W. Va. at 616, 408 S.E.2d at 368, syl. pt. 6. Critically, "[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans." *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (additional citation and quotations omitted). Indeed,

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one fact to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. Pt. 4, *In re B.H. and S.S.,* 233 W. Va. 57, 754 S.E.2d 743 (2014).

At petitioner's disposition hearing, DHS came forward with extensive evidence and testimony showing that while petitioner complied with some aspects of her case plan, not all of the conditions of her improvement period were satisfied. In particular, DHS showed that the requirement that petitioner get treatment for her mental health was not sufficiently addressed to justify the return of K.V. to petitioner's custody. Specifically, DHS submitted the psychological report that was prepared by licensed psychologist Megan Green and called Dr. Green to testify regarding her findings. Dr. Green explained that she had concerns about petitioner's mental health:

> I really thought [petitioner] has some indications of bipolar disorder. And when she came to the evaluation, she has some mental status irregularities that were concerning in terms of hypomania.

4

So, for example, in terms of thought processes they were tangential, circumstantial. Her speech was very loud. It was difficult to redirect her to remain focused on relevant topics. She sometimes responded to inquiries with irrelevant responses, elaborated on irrelevant details, but then wouldn't respond to very relevant inquiries.

She presented as kind of an intense person and sometimes that is just an interpersonal style. There are other times where that can certainly be indicative of hypomania and I was concerned about that in terms of that possibly being a mental health concern that hasn't been adequately or at least consistently addressed.

In addition to Dr. Green, DHS also presented testimony at the dispositional hearing from Stevie Edwards, petitioner's service provider at Liam's Place, where petitioner was referred for adult life skills classes, parenting classes, drug screening, and supervised visitation with K.V. Caitlyn Henshey, the child protective services worker assigned to petitioner's case, also testified on behalf of DHS. Both Ms. Edwards and Ms. Henshey gave extensive testimony about petitioner's erratic behavior throughout the case and her refusal to get treatment for her mental health issues.

Ms. Edwards testified that while petitioner had appeared for her scheduled classes, it was difficult to provide services because of her paranoia. She explained that from the beginning, petitioner was "very hesitant to give information . . . due to her thinking that it was going to be used against her." She further testified that petitioner's paranoia increased after she had a positive drug screen for codeine, and that petitioner became convinced that someone at Liam's Place had "slipped something in her drink." Ms.

Edwards testified that petitioner made multiple calls to the lab about her positive test and eventually refused to come to Liam's Place for services.

As discussed above, Ms. Henshey testified that petitioner refused to acknowledge the abuse and neglect that occurred in the current proceeding as well as in her previous case. Ms. Henshey also testified about instances of petitioner's erratic behavior, indicating that petitioner "is more focused on things that are not happening." In that regard, she explained that petitioner became fixated on her child's health and accused the foster placement of exposing K.V. to HIV and tuberculosis despite there being no medical basis for petitioner's concern. Ms. Henshey further testified that petitioner had violated visitation stipulations by visiting K.V. at her initial foster placement without supervision and then, on another occasion, by removing the child from the foster parent at a local festival because she found the child's stroller to be dirty. In addition, Ms. Henshey noted that petitioner had attempted to locate K.V.'s current foster family by calling the child's doctor and looking the family up on a social media website.

Regarding petitioner's positive drug screen for codeine, Ms. Henshey testified that petitioner "proceeded to call the drug screen [lab] and was harassing to the point they had to ask me for assistance and voice their safety concerns." Ms. Henshey further testified that when she told petitioner that her visitation with K.V. had to be stopped because of her positive drug screen and behavior, petitioner gave a nonsensical response indicating that she was "not surprised" and stating "I have only eaten fast food. I have not

had their drinks." Ms. Henshey also testified that petitioner had been offered psychiatric services several times but had declined to participate. Notably, the record shows that from the outset, petitioner's case plan required her to seek mental health treatment and a mental health evaluation from a psychiatrist. To facilitate the required mental health evaluation, DHS referred petitioner to WVU Behavioral Health in March 2022 and again in April 2022, but each time, petitioner failed to keep the appointment. Petitioner's failure to keep these appointments as well as her refusal to attend the counseling sessions to which she was referred were documented in the reports DHS filed with the circuit court.

Given all the evidence submitted to the circuit court and the testimony presented at the disposition hearing, even if the majority was correct and there was a shifting of the burden of proof, which I maintain did not occur, such shifting was harmless. While shifting the burden of proof in the context of severing the parent-child relationship may be a violation of a parent's due process rights,[2] as this Court recognized in *In re K.L.*, 233 W. Va. 547, 553, 759 S.E.2d 778, 784 (2014), for that error to be reversible, it must have clearly prejudiced the parent. Indeed, it has long been held that "[f]ailure to observe a constitutional right constitutes reversible error *unless it can be shown that the error was harmless beyond a reasonable doubt.*" Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va.

---

[2] *See* Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.")

647, 214 S.E.2d 330 (1975) (emphasis added).  In *In re K.L.*, it was determined that the burden-shifting that occurred prejudiced the parent because the circuit court "did not require the DHHR to adduce evidence or provide testimony at the dispositional hearing." *Id.*, 233 W. Va. at 553-54, 759 S.E.2d 784-85.  However, that is not what happened in this case as illustrated by the evidence and testimony discussed above, which DHS presented at the dispositional hearing.

Indeed, DHS demonstrated by clear and convincing evidence that petitioner had not satisfied the conditions of her improvement period and had not made sufficient progress in the context of all of the circumstances to support a finding that reunification was in the best interests of K.V.  Consequently, to the extent that there was a shifting of the burden of proof, petitioner was not prejudiced, and thus, no reversible error occurred. Accordingly, I respectfully dissent.