## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: R.Y.**

**No. 16-1125** (Mercer County 15-JA-199)

**FILED**

**November 2, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

T.Y. (hereinafter the "petitioner" or "mother") appeals the October 21, 2016, order of the Circuit Court of Mercer County terminating her parental rights to her daughter, R.Y.[1] The petitioner also asserts error regarding several pre-termination rulings of the circuit court. The respondents, the Department of Health and Human Resources ("DHHR") and the child's guardian ad litem, argue in support of the circuit court's actions.[2]

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I. Facts and Procedural History

Upon her birth in November 2015, the infant R.Y. tested positive for the presence of opiates in her system. The hospital advised the DHHR of this test result and that R.Y. was exhibiting physical signs of withdrawal, including tremors, a hypertonic tone, regurgitation, and sneezing. The hospital categorized these symptoms as "an 8 on the withdrawal scale." The petitioner mother asserted that she had a prescription to take opiate pain medication during her pregnancy, which the DHHR later confirmed. When questioned by a DHHR worker, the petitioner denied taking any illegal drugs during her pregnancy.

---

[1]Because this case involves children and sensitive matters, we follow our practice of using initials to refer to the children and their parents. *See* W.Va. R. App. P. 40(e); *In re K.H.*, 235 W.Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015)*; State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2]The petitioner is represented by attorney Shannon L. Baldwin, and the DHHR is represented by Assistant Attorney General S. L. Evans. The guardian ad litem is attorney Elizabeth A. French.

In addition, the DHHR knew the petitioner had been the subject of an abuse and neglect case that began in 2006 and resulted in the involuntary termination of her parental rights to two other children in 2008. When terminating her rights in 2008, the circuit court found the petitioner had "habitually abused or is addicted to controlled substances or drugs to the extent that her proper parenting skills have been seriously impaired, and she has not followed through with the recommended and appropriate treatment which could have improved her capacity for adequate parental functioning[.]" The petitioner was unable to complete an improvement period in that case because she was incarcerated.

On November 17, 2015, the DHHR and the petitioner agreed to a voluntary temporary protection plan whereby the petitioner's mother, who lived nearby, would check on the petitioner and R.Y. every day. On November 20, 2015, the hospital advised the DHHR that R.Y.'s meconium (first stool) had tested positive for the presence of cocaine and marijuana, indicating that the petitioner had ingested these illegal drugs during her pregnancy. The same day, the DHHR and the petitioner agreed to a new voluntary temporary protection plan placing R.Y. in the maternal grandmother's home. Pursuant to this agreed plan, the petitioner could visit the baby at any time so long as it was under the maternal grandmother's supervision.

On December 4, 2015, the DHHR filed an abuse and neglect petition against the petitioner citing both the petitioner's drug use while pregnant with R.Y. and the prior terminations.[3] At that time, the DHHR did not know the identity of R.Y.'s father. The circuit court entered an order on December 4, 2015, directing that the abuse and neglect petition be filed, appointing counsel for the petitioner, appointing a guardian ad litem for the child, and scheduling a status hearing. This order did *not* address the issue of the child's placement and did not award custody to the DHHR.

Meanwhile, in early December 2015, the DHHR removed R.Y. from the maternal grandmother's home and placed the baby in the home of the petitioner's ex-boyfriend, B.R., and B.R.'s girlfriend, C.G.[4] Although B.R. is not R.Y.'s father, he is the biological father

---

[3]West Virginia Code § 49-4-605(a)(3) (2015 & 2017 Supp.) provides, in relevant part, that "the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: . . . If . . . the parental rights of the parent to another child have been terminated involuntarily."

[4]The date on which the DHHR removed the child from the maternal grandmother's home is not specified in the appendix record. However, during oral argument, the petitioner's counsel represented that this occurred the same day the abuse and neglect petition was filed.

2

of the petitioner's other two children.  One of those children, a teenaged boy, lives with B.R. and C.G.  The DHHR removed R.Y. from the maternal grandmother's home without the petitioner's consent, without performing a suitability study of B.R. and C.G.'s home, and without obtaining a court order regarding the removal.

On January 4, 2016, the status hearing was held during which the circuit court expressed concern about the DHHR's removal of the child without seeking a preliminary hearing or obtaining a court order.  The court inquired whether the petitioner wanted a hearing on this issue.  The petitioner responded in the affirmative and the court heard evidence. A DHHR worker testified that the child was moved to a sibling placement because the maternal grandmother had ongoing health issues stemming from a previous stroke.  By written order entered January 29, 2016, the court concluded that the DHHR took R.Y. without affording the petitioner due process.  Nonetheless, the court also found that continuation with the petitioner and the maternal grandmother would have been contrary to the child's best interests and probable cause existed to support the removal.  As such, the child remained in her temporary placement with B.R. and C.G.

Although she did not initially identify R.Y.'s father, at some point the petitioner advised the DHHR that the father is M.W.  The circuit court ordered testing to establish M.W.'s paternity and, in February 2016, the DHHR amended its abuse and neglect petition to add a claim against M.W. for the failure to support this child.

The adjudication hearing began on February 8, 2016.  At that time, the petitioner testified and denied the use of cocaine or marijuana during her pregnancy.  She claimed that she only took opiate pain medication pursuant to a prescription, and suggested that the results of the drug tests of R.Y.'s meconium were incorrect.  However, when the adjudication hearing resumed on March 4, 2016, the petitioner offered to stipulate that R.Y.'s meconium had tested positive for the presence of cocaine and marijuana.  By order entered on March 16, 2016, the circuit court adjudicated the petitioner as an abusive parent because she abused drugs during her pregnancy.  The court also adjudicated the father M.W. as neglectful for having failed to provide proper support when he knew he had a relationship with the petitioner that could have resulted in the birth of a child.[5]  The court awarded M.W., but not the petitioner, a post-adjudicatory improvement period.

During the adjudication hearing, both the petitioner and the DHHR objected to the child remaining in the home of B.R. and C.G.  To address these objections, the circuit court

---

[5]Although we include information about the father, M.W., as part of the history of this case, none of the circuit court's rulings pertaining to M.W. are at issue in this appeal.

held a separate hearing on the placement issue on March 25, 2016. Although no testimony was offered at the March 25 hearing, counsel referenced an alleged prior domestic violence incident between B.R. and his former wife. There was also a report of bacteria found in the water inside B.R. and C.G.'s home. The petitioner requested that the child be placed with the *paternal* grandparents, whose home had since been approved by the DHHR. The petitioner argued that placement with the paternal grandparents would facilitate the DHHR's plan of ultimate reunification of the child and the father. At the March 25 hearing, the DHHR withdrew its objection to the placement with B.R. and C.G. The DHHR had satisfied itself that the facts of the domestic violence claim were not a problem, and it had confirmed the installation of a water filtration system inside B.R. and C.G.'s home. The guardian ad litem supported leaving the child in B.R. and C.G.'s home because the child had already been there for a few months and because a half-sibling resided in the home. At the conclusion of the March 25 hearing, the circuit court relied upon the guardian ad litem's recommendation and ordered that R.Y. would remain in her temporary placement.

A disposition hearing was held on July 11, 2016, and October 6, 2016. The petitioner presented evidence from two service providers that she was doing well with her weekly, four-hour-long, supervised visits with R.Y. and with parenting education lessons. The petitioner's parole officer testified that in three drug screens administered in a two-year period, the petitioner only tested positive for prescribed medication. The last of those screens was administered approximately two months before R.Y. was born with illegal drugs in her system. One of the service providers testified that since the current abuse and neglect petition has been pending, the petitioner tested positive for marijuana. At the end of the July 11 hearing, the petitioner admitted that, if tested that very day, she would be positive for marijuana. During the October 6 hearing, her attorney admitted that the petitioner had a drug problem. The petitioner moved for a post-adjudicatory improvement period that would include drug treatment, which the court denied. The circuit court verbally ruled that "based upon the evidence from prior hearings and the evidence that she's still having problems today, I'm going to terminate the rights of" the petitioner.

The termination decision was finalized by written order entered on October 21, 2016, and the petitioner appealed. The parties have notified the Court that during the pendency of this appeal, R.Y. was moved into the home shared by the father M.W. and his parents.

## II. Standard of Review

When reviewing a circuit court's order in an abuse and neglect case, we apply a "compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). In further elaboration of these standards, this Court

4

explained:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With these standards in mind, we will separately address each of the petitioner's assignments of error.


### III. Discussion

### A. The DHHR's unauthorized removal of the child

As set forth above, two weeks after her birth, R.Y. was placed in the care of her maternal grandmother pursuant to a pre-petition protection plan to which the petitioner consented. However, after filing its December 4, 2015, abuse and neglect petition, the DHHR removed R.Y. from the maternal grandmother's home. The petitioner argues, and the circuit court found, that the DHHR violated the petitioner's due process rights by removing the child from the agreed placement without scheduling a preliminary hearing and obtaining a court order approving the removal. Approximately one month after the removal, the circuit court sua sponte took up the issue, held a preliminary hearing, and concluded that the removal was justified. On appeal, the petitioner argues that the circuit court should have instead "reversed" the "illegal removal" of her child.

We begin by observing that the petitioner's due process complaint is well-founded. R.Y. was living in the maternal grandmother's home with the petitioner's consent, and a parent has a constitutionally-protected right to make decisions about the care and custody of her child. *See, e.g.*, *In re F.S.*, 233 W.Va. 538, 543, 759 S.E.2d 769, 774 (2014); *In re Jeffrey R.L.*, 190 W.Va. 24, 32, 435 S.E.2d 162, 170 (1993). Although there are statutes permitting

5

the emergency removal of a child, those statutes, and the procedures specified therein, were not followed when the DHHR removed R.Y.

West Virginia Code § 49-4-602(a)(1) (2015)[6] permits a circuit court to order a child into the DHHR's custody for not more than ten days if the court finds that the contents of the abuse and neglect petition demonstrate imminent danger and there are no reasonably available alternatives to removal. However, the circuit court herein made no such findings in its December 4, 2015, order. The order did not even mention the issues of custody and placement. Moreover, even if the court had granted emergency custody to the DHHR for ten days based upon the allegations in the petition, West Virginia Code § 49-4-602(b)[7] would have required that this custody decision be addressed at a preliminary hearing. The DHHR

---

[6]West Virginia Code § 49-4-602(a)(1) provides:

(a)(1) Temporary care, custody, and control upon filing of the petition. – Upon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the care, custody, and control of the department or a responsible person who is not the custodial parent or guardian of the child, if it finds that:
(A) There exists imminent danger to the physical well-being of the child; and
(B) There are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody.

[7]West Virginia Code § 49-4-602(b) provides, in part:

(b) Temporary care, custody and control at preliminary hearing. – Whether or not the court orders immediate transfer of custody as provided in subsection (a) of this section, if the facts alleged in the petition demonstrate to the court that there exists imminent danger to the child, the court may schedule a preliminary hearing giving the respondents at least five days' actual notice. If the court finds at the preliminary hearing that there are no alternatives less drastic than removal of the child and that a hearing on the petition cannot be scheduled in the interim period, the court may order that the child be delivered into the temporary care, custody, and control of the department or a responsible person or agency found by the court to be a fit and proper person for the temporary care of the child for a period not exceeding sixty days[.]

6

did not seek such a hearing. In addition, West Virginia § 49-4-602(c)[8] allows the DHHR to make an emergency custody change during the pendency of an abuse and neglect case if there is a change in circumstances warranting the move, but the DHHR is required to "immediately notify the court and a hearing shall take place within ten days to determine if there is imminent danger to the physical well-being of the child, and there is no reasonably available alternative to removal of the child." Instead of complying with these statutes,[9] the DHHR removed R.Y. from the mother's custody and the maternal grandmother's care without seeking court approval, not even an after-the-fact order ratifying the change. The circuit court sua sponte observed this problem during a status conference and was forced to take action to protect the petitioner's rights.

Although this Court is highly critical of the DHHR's failure to follow the statutory procedures, we do not agree with the petitioner's assertion that she was, or is, entitled to the return of her child. The circuit court acted quickly to rectify the DHHR's mistake by holding the required preliminary hearing and making the appropriate findings on January 4, 2016. While the hearing was not held within ten days of the removal, it was held just a few weeks later, thus mitigating the violation of the petitioner's rights. The circuit court required the DHHR to explain the reasons for taking custody of R.Y., and the petitioner's counsel was permitted to cross-examine the DHHR's witness and present evidence of her own. Furthermore, because the petitioner had lost her rights to other children, the DHHR was not

---

[8]West Virginia Code § 49-4-602(c) provides:

(c) Emergency removal by department during pendency of case. – Regardless of whether the court has previously granted the department care and custody of a child, if the department takes physical custody of a child during the pendency of a child abuse and neglect case (also known as removing the child) due to a change in circumstances and without a court order issued at the time of the removal, the department must immediately notify the court and a hearing shall take place within ten days to determine if there is imminent danger to the physical well-being of the child, and there is no reasonably available alternative to removal of the child. The court findings and order shall be consistent with subsections (a) and (b) of this section.

[9]Another statute, West Virginia Code § 49-4-303 (2015), authorizes the DHHR to take emergency custody of a child *before* an abuse and neglect petition is filed. When the DHHR removes a child pursuant § 49-4-303, the DHHR must "forthwith appear before a circuit judge or referee . . . and immediately apply for an order" ratifying the emergency custody. *Id.* Because it appears that R.Y. was removed after the petition was filed, the other statutory provisions cited herein would control.

7

legally required to preserve the family when considering temporary placement options. *See* W.Va. Code § 49-4-602(d)(3) (2015).[10]

More importantly, after hearing the evidence, the circuit court found that the removal was warranted in order to protect this infant. *See* Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."). During the January 4, 2016, hearing, the court learned that not only had the petitioner's parental rights to other children been terminated due to her drug abuse, but this child was born with cocaine and marijuana in her system despite the mother's denial that she had used illegal drugs. The child was in imminent danger of harm, and the circuit court correctly ruled that there were no reasonably available alternatives to the removal. *See* W.Va. Code §§ 49-4-602(a), (b), and (c). As such, we find that no reversible error is raised by this assignment of error.

## B. The child's temporary placement

The petitioner asserts that it was error for the circuit court to have approved the temporary placement of R.Y. in the home shared by her ex-boyfriend, B.R., and his girlfriend, C.G. She argues that placing R.Y. with the paternal grandparents, who were found to be suitable care-givers, would have furthered the DHHR's ultimate goal of having the child's father, M.W., obtain full custody. Moreover, she contends that the circuit court placed too great of an emphasis on placement of the infant in a home with a teenaged half-sibling, when the law also recognizes a preference for grandparent placement. *See* W.Va. Code § 49-4-114(a)(3) (2015) (when parental rights are terminated, DHHR "shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child.").

The DHHR and the guardian ad litem explain that on January 4, 2016, when the circuit court first learned of and approved this temporary placement, the identity of the biological father had not yet been confirmed by paternity testing. As such, the paternal grandparents had not yet been identified or had their home approved for child placement. R.Y. was placed into the home of a half-sibling, and both the DHHR and the guardian ad litem stress the importance of fostering sibling relationships.

---

[10]West Virginia Code § 49-4-602(d) provides, in part, that "[f]or purposes of the court's consideration of temporary custody . . . , the department is not required to make reasonable efforts to preserve the family if the court determines: . . . (3) The parental rights of the parent to another child have been terminated involuntarily."

After this issue was raised again during the petitioner's adjudicatory hearing, the circuit court held a separate hearing solely to consider this placement. Upon considering the presentations of counsel, the circuit court relied upon the recommendation of the guardian ad litem to leave the child in B.R. and C.G.'s home. Later, during the disposition hearing, the circuit court indicated a willingness to re-examine this issue and directed the mult-disciplinary review team to consider a placement with the paternal grandparents. Finally, the parties have reported that during the pendency of this appeal, R.Y. was moved into the home shared by the paternal grandparents and M.W. Thus, the petitioner has already received the relief she seeks in this assignment of error.

After carefully considering the record, this Court finds no error of law or abuse of discretion in the circuit court's temporary placement decision. The circuit court, in following the recommendations of the DHHR and the guardian ad litem, was focused on ensuring that siblings were placed together. Although members of this Court might have ruled differently if we had been deciding where to place this child, as the appellate court, we cannot substitute our judgment for that of the circuit court. *See Tiffany Marie S.*, 196 W.Va. at 226, 470 S.E.2d at 180, syl. pt. 1, in part ("[A] reviewing court may not overturn a finding simply because it would have decided the case differently[.]"). Moreover, if M.W. believes that placement in B.R. and C.G.'s home hampered his ability to gain custody, then he must be the person to raise the issue. The petitioner lacks standing to assert an assignment of error on behalf of another party. *See In re J.G.*, No. 16-0337, 2016 WL 4611246, at *3 (W.Va. Sept. 6, 2016) (memorandum decision) (recognizing that petitioner father lacked standing to appeal limitation on mother's visitation).

## C. Adjudication of abuse

The petitioner also challenges the circuit court's adjudication of her as an abusing parent and of R.Y. as an abused child. *See* W.Va. Code § 49-4-601(i) (2015) (directing circuit court to, at conclusion of adjudicatory hearing, determine whether child is abused or neglected and whether parent is abusing or neglecting). The petitioner points to a provision in the circuit court's written adjudication order noting that R.Y. tested positive for opiates at birth; the written order does not mention other drugs. The petitioner argues that because she had a prescription from her obstetrician to take opiates, ingesting this medication did not constitute child abuse. In her reply brief, the petitioner extends her argument to assert that the prenatal use of any drug cannot constitute the abuse or neglect of a child. However, the petitioner's arguments ignore both the record evidence and a recent opinion of this Court.

The circuit court's written adjudicatory order concluded that the petitioner had "abused drugs during her pregnancy." Regardless of whether the petitioner had a prescription for an opiate medication, there was evidence in the record proving that she also

consumed cocaine and marijuana while pregnant with R.Y. Although the petitioner previously denied using these illegal drugs while pregnant, during the second day of the adjudicatory hearing she stipulated to the drug test results revealing the presence of these drugs in her newborn baby's first stool. Thus, although the circuit court's written order did not state that the baby was exposed to cocaine and marijuana in utero, this exposure was ultimately uncontested. It is obvious that the circuit court's omission of these drugs from its written order was merely inadvertent.

An "abused child" is "[a] child whose health or welfare is being harmed or threatened by: . . . A parent . . . who knowingly or intentionally inflicts [or] attempts to inflict" injury to the child. W.Va. Code § 49-1-201 (2015 & 2017 Supp.). This Court recently held that "[w]hen a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child, as those terms are defined" in the abuse and neglect statutes. Syl. Pt. 1, in part, *In re A.L.C.M.*, 239 W.Va. 382, 801 S.E.2d 260 (2017). By ingesting marijuana and cocaine during her pregnancy, the petitioner abused R.Y. While the circuit court's adjudication order could have more thoroughly cataloged the petitioner's prenatal drug use, there can be no conclusion but that the petitioner was properly adjudicated as an abusing parent of R.Y.

## D. Denial of post-adjudicatory improvement period

During the disposition hearing, the petitioner's counsel acknowledged that the petitioner had a drug problem and moved for a post-adjudicatory improvement period that would include substance abuse treatment. At the conclusion of the hearing, the circuit court terminated the petitioner's parental rights without expressly ruling on this motion, thus effectively denying the same. The petitioner asserts that based upon the evidence she presented during the disposition hearing, it was error for the circuit court to have denied her motion.

As an initial matter, we note that it appears the petitioner only made a verbal motion for an improvement period, whereas West Virginia Code § 49-4-610(2)(A) (2015) requires a party to "file[] a written motion requesting the improvement period[.]" Regardless, even if a written motion had been filed, we would find no error in its denial.

In order to obtain a post-adjudicatory improvement period, West Virginia Code § 49-4-610(2)(B) requires a parent to "demonstrate[], by clear and convincing evidence, that [the parent] is likely to fully participate in an improvement period[.]" The decision to grant or deny an improvement period rests within the circuit court's discretion. Syl. Pt. 2, in part, *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]").

10

The record clearly demonstrates that the petitioner was abusing drugs as far back as 2006, when the prior abuse and neglect petition was filed against her. In that case, she was provided an improvement period and drug treatment, which she failed to complete. The record further shows that her drug abuse has continued. Although she passed a few drug tests while on probation, the probation ended before R.Y. was born–and the uncontested drug test results prove that the petitioner consumed opiates, cocaine, and marijuana while pregnant with R.Y. in 2015. Moreover, despite her initial denials about illegal drug use, the petitioner later acknowledged that she continues to have a drug problem. "[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]" Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). After reviewing the record, we find no abuse of discretion in the circuit court's denial of a post-adjudicatory improvement period.

## E. Termination

Lastly, the petitioner appeals the termination of her parental rights to R.Y. At the conclusion of the disposition hearing, the circuit court verbally ruled that it was terminating her rights based upon the evidence presented at the hearings in this case and "the evidence that she's still having problems today." This evidence included that the petitioner used both cocaine and marijuana during her pregnancy with R.Y.; that she initially lied about this illegal drug use; and that she continued to use drugs during the pendency of this case. Although the petitioner urges this Court to consider her successful passage of drug tests while on probation, it is clear that her illegal drug use continued after her probationary period ended.

The circuit court considered this evidence against the backdrop of the previous abuse and neglect case where the petitioner's rights to other children were involuntarily terminated due to her severe drug abuse. When a parent's rights to a sibling were involuntarily terminated, West Virginia Code § 49-4-605(a)(3) (2015 & 2017 Supp.) requires the DHHR to pursue an abuse and neglect petition to protect any other children the parent may have.[11] A central issue in such a case is whether the parent has corrected the abusive behavior that resulted in the prior termination. Syl. Pt. 2, in part, *In re George Glen B., Jr.,* 205 W.Va. 435, 518 S.E.2d 863 (1999) ("Where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court[.]"). Indeed, a prior involuntary termination "lowers the

---

[11]*See supra* note 3.

threshold of evidence necessary for the termination of parental rights" to the after-born child. Syl. Pt. 5, in part, *In re George Glen B., Jr.*, 207 W.Va. 346, 532 S.E.2d 64 (2000). Moreover, because of the prior involuntary terminations, the DHHR was not required to make reasonable efforts to preserve the petitioner's rights to Y.R. *See* W.Va. Code § 49-4-604(b)(7)(C) (2015 & 2017 Supp.).[12]

The Legislature has directed circuit courts to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child[.]" W.Va. Code § 49-4-604(b)(6). A parent's habitual drug abuse or addiction to drugs, when the parent has not followed the appropriate treatment, constitutes a scenario where there is no reasonable likelihood that the abusive conditions can be substantially corrected. *See* W.Va. Code § 49-4-604(c)(1).[13] Despite being granted an improvement period and treatment in the prior case, and despite a period of incarceration followed by supervised probation, the petitioner did not correct the abusive behavior that led to her prior involuntary terminations. There was no reasonable likelihood the conditions of abuse and neglect would be substantially corrected in the near future, and the circuit court did not err by terminating the petitioner's parental rights to R.Y.

Notwithstanding the evidence supporting termination, the petitioner argues that the

---

[12]West Virginia Code § 49-4-604(b)(7)(C) provides: "For purposes of the court's consideration of the disposition [of] custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines: . . . (C) The parental rights of the parent to another child have been terminated involuntarily[.]"

[13]West Virginia Code § 49-4-604(c)(1) provides:

As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Those conditions exist in the following circumstances, which are not exclusive: (1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning[.]

disposition ruling should be vacated and the case remanded back to the circuit court because of a lack of findings of fact and conclusions of law in the written termination order. She relies on *In re Edward B.*, where this Court explained that an order is "inadequate" if it fails to state the statutory findings required by the disposition statute. *See* Syl. Pt. 4, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). The respondents argue that despite shortcomings in the disposition order, there is extensive evidence in the record to support termination.

This Court agrees that the circuit court's order should have included findings of fact and conclusions of law regarding the termination. Nonetheless, given the petitioner's prior terminations and the record evidence that clearly demonstrates her ongoing abusive behavior, we find no benefit to remanding this matter for the entry of a new order. The petitioner admitted, through counsel, that she continues to have a "drug problem," which was the very reason she lost custody of other children a decade ago. Remanding for the entry of an order that would contain findings about uncontradicted evidence would only serve to delay the permanency that R.Y. deserves. In syllabus point five of *Edward B.*, this Court explained that remand for a new disposition order is appropriate when "it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated[.]" *Edward B.*, 210 W.Va. at 624, 558 S.E.2d at 623, syl. pt. 5, in part. After considering the record and the parties' arguments, we are unable to conclude that the procedures used to reach the disposition decision were substantially disregarded or frustrated. Accordingly, we affirm.[14]

Affirmed.

---

[14]In an assignment of error that contains just one paragraph of argument and no citation to authority, the petitioner argues that it was reversible error for three different judges to have presided over her adjudication and disposition hearings. We quickly dispose of this issue. Sometimes it is necessary for a different judge or judges to take over a pending case, such as when a new judge is elected. Each judge in the petitioner's case had access to the existing record, and the petitioner was represented by counsel who was able to inform the successor judges of the procedural and factual history of the case. Moreover, the petitioner fails to point to any specific ruling that was erroneous because it was made by a successor judge. As such, we find no merit to this assignment of error.

**ISSUED:** November 2, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker