# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.R.**

**No. 19-0896** (Kanawha County 18-JA-313)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother B.R., by counsel Jennifer N. Taylor, appeals the Circuit Court of Kanawha County's September 17, 2019, order terminating her parental rights to J.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she "acknowledged her fault in the previous terminations, demonstrated significant improvements in her lifestyle[,] and never abused or neglected the present child." Petitioner also asserts that the circuit court erred in failing to impose a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed an abuse and neglect petition against petitioner on the basis of the prior involuntary termination of her parental rights to older children in a separate

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

proceeding by order entered in September of 2017.[2] The petition further alleged, generally, that petitioner failed to provide J.R. with necessary food, clothing, supervision, and housing.

In September of 2018 and November of 2018, the circuit court held adjudicatory hearings, during which the DHHR presented testimony that "the allegations in [petitioner's] prior case" included unsuitable housing, educational neglect, the children's poor hygiene, and substance abuse by petitioner. Ultimately, the circuit court found that petitioner failed to remedy the issues from the prior proceeding, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. According to the record, the terms and conditions of petitioner's improvement period required her to participate in random drug screens, supervised visits with the child, parenting education with a focus on special needs children, and a psychological evaluation.

Throughout the proceedings, the circuit court heard evidence regarding petitioner's noncompliance with services offered in the current matter and the prior matter. According to a DHHR worker, petitioner was provided "nearly four years of services" during the prior proceeding with no noticeable improvement in her ability to parent. Based on petitioner's prior inability to remedy the issues in regard to her older children, including her history of not adequately feeding them, the DHHR employee testified that J.R. was at risk for similar maltreatment. Specifically, a DHHR service provider who worked with petitioner in both the prior case and the underlying matter testified that petitioner "knows what to do" but simply "decides . . . she doesn't want to do it." According to this service provider, petitioner was compliant "for the most part" during the prior proceeding, but "as soon as she took the kids home" her compliance waned, thereby putting the children at risk. The provider further testified to her concerns for J.R.'s safety in petitioner's care, given petitioner's issues with compliance and the child's special needs.[3]

Further, the circuit court heard evidence that the DHHR did not believe petitioner was living at the address she provided. According to the DHHR, a worker visited petitioner's apartment on five different occasions, but could not make contact. On one occasion when the DHHR unsuccessfully attempted to gain access to inspect the home because the door went unanswered, the DHHR worker spoke with petitioner by phone, and petitioner reported that she was sleeping in the apartment. When the DHHR worker asked to be let in, petitioner stated that she lied and was not in the apartment. The DHHR eventually gained access to the apartment for an inspection, and petitioner explained that she had not been staying at the apartment. Petitioner gave the DHHR different explanations for her not staying in the apartment, including that her "maw-maw" needed care and because the apartment needed to have extermination services. According to the worker who inspected the apartment, there were no clothes or food in the home and only minimal furniture, supporting the DHHR's position that petitioner did not live there. When the DHHR returned to the apartment a few days later, they found an adequate supply of food and clothing for the child, although petitioner admitted that "she did not like staying in the apartment . . . and would rather

---

[2]The Court affirmed the prior termination of petitioner's parental rights to these older children by memorandum decision. *See In re A.C. and C.C.*, No. 17-0879, 2018 WL 1251840 (W. Va. March 12, 2018)(memorandum decision).

[3]The record indicates that J.R. suffers from a neurological condition that requires extensive care.

stay with family." According to another DHHR worker, petitioner was "never . . . completely honest" about her living situation, which resulted in the DHHR's inability to confirm that she lived at the apartment in question. Based upon this evidence, the circuit court found that petitioner was not complying with the terms and conditions of her improvement period and that the improvement period had expired by its express terms in April of 2019.

In July of 2019, the circuit court held a dispositional hearing, during which the DHHR presented evidence related to petitioner's noncompliance with services. The circuit court again heard evidence related to petitioner's living arrangements and the fact that "[t]he apartment [petitioner] was living in appeared unoccupied as [of] late April of 2019." According to the circuit court, the evidence showed that petitioner "lied about her living arrangements," and the circuit court further found that her testimony was not credible. The DHHR also presented evidence regarding the "extensive support services" petitioner received during the prior case. According to the circuit court, petitioner failed to benefit from these services and additionally chose not to comply with her parenting education services and her overall improvement period in the current matter. As such, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future because she "failed to follow through with necessary and appropriate changes in her attitudes and behavior." This finding was based, in part, upon petitioner's attempts to blame the father of her other children for the prior termination of her parental rights at various points during the current proceedings. Further, the circuit court noted several times in the current matter that petitioner attempted to minimize her abuse and neglect of the older children. Because it was necessary for the child's welfare, the circuit court terminated petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[4]The child's unknown father's parental rights were also terminated. According to the parties, the permanency plan for the child is adoption by the current foster family.

On appeal, petitioner asserts two assignments of error, both of which attack the circuit court's termination of her parental rights. First, petitioner argues that it was error to terminate her parental rights because she acknowledged the conditions that necessitated her prior terminations, significantly improved those conditions prior to the filing of the new petition, and never abused or neglected the present child.[5] In support of this assignment of error, petitioner relies primarily on her negative drug screens from the time of the child's birth throughout the pendency of the proceedings below to assert that she corrected the conditions that led to the prior terminations. In short, petitioner's argument on appeal is that because she corrected the conditions of abuse and neglect from the prior proceedings, J.R. was not in danger of such abuse or neglect. We do not agree.

As this Court has held,

> "[w]hen an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § [49-4-605(a)(3)], prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s)." Syllabus Point 4, *In re George Glen B., Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999).

Syl. Pt. 4, *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000). Further, this Court has been clear that "[t]he presence of one of the factors outlined in W.Va. Code [§ 49-4-605(a)(3)] . . . lowers the threshold of evidence necessary for the termination of parental rights." *Id.* at 349, 532 S.E.2d at 67, syl. pt. 5, in part.

While it is commendable that petitioner was able to remain drug free during the proceedings, we note that her assertion that the prior termination was based solely on her substance abuse is inaccurate. On the contrary, the record shows that a DHHR employee testified that the allegations in the prior case concerned conditions beyond substance abuse, including inappropriate housing. Indeed, in affirming the prior termination of petitioner's parental rights to her older children, this Court recognized that at adjudication in the prior proceeding, petitioner stipulated to a "history of substance abuse *that negatively affected* [*her*] *ability to parent.*" *In re A.C.*, 2018 WL 1251840, at *1. This indicates that, beyond substance abuse, petitioner engaged in inappropriate parenting, which included her failure to provide the children with appropriate housing, among several other issues. Indeed, despite an attempted return of the older children to petitioner's care in the prior proceeding, by the time of the dispositional hearing in that case "[a] DHHR worker testified . . . that [petitioner's] home had an inadequate food supply . . . [and] was unfit for children." *Id.* at *2. As such, contrary to petitioner's attempt to limit the scope of the allegations against her, it is clear that termination of her parental rights to the older children was based, in

---

[5]Despite petitioner's assertion that she never abused or neglected the child at issue, petitioner does not raise an assignment of error concerning adjudication in the proceedings below. As such, the Court's analysis in this memorandum decision concerns only the circuit court's termination of petitioner's parental rights.

part, upon issues beyond substance abuse. Further, it is clear that petitioner failed to remedy these issues.

Specifically, petitioner's problems with appropriate housing persisted in the present case. On appeal, petitioner cites to findings that her apartment was clean and appropriate for her child. Petitioner fails to recognize, however, that her dishonesty with the DHHR and the circuit court concerning this apartment resulted in her inability to fully correct the issue. As noted above, the circuit court found that petitioner's testimony at disposition was not credible because she lied about her living arrangements. According to the record, just a few months prior to disposition, petitioner's apartment "appeared unoccupied." Further, petitioner provided conflicting explanations for why her belongings were not in the apartment upon the DHHR's inspection, including that she was providing care for a relative and that the apartment required extermination services. However, petitioner eventually admitted that she did not like living in the apartment and preferred residing with family. As such, it was impossible for petitioner to have corrected the continuing issues of appropriate housing, given her refusal to honestly cooperate with the DHHR concerning this issue. As a service provider testified below, the DHHR was never able to confirm that petitioner lived in the apartment and, thus, could not determine if petitioner's actual residence was appropriate for the children. Regardless of the condition of the apartment that petitioner obtained, the fact remains that her dishonesty prevented the circuit court from determining if she could maintain a home in acceptable condition because the evidence showed that petitioner did not live there.

Further, petitioner is correct that this Court has held that when the DHHR has a "mandatory duty to file a petition, a circuit court may not terminate parental rights without additional evidence of abuse or neglect of the current child." *George Glen B.*, 207 W. Va. at 350, 532 S.E.2d at 68. However, we do not agree with petitioner's assertion on appeal that she never abused or neglected the child at issue. Given the fact that petitioner participated in nearly four years of services in the prior abuse and neglect proceedings without improvement sufficient to correct the conditions of abuse and neglect, coupled with the brief time period between the conclusion of the prior proceedings and the birth of J.R., it is clear that the child's welfare was threatened by petitioner's continued inability to remedy these conditions. This is especially true considering J.R.'s special needs that required heightened care. According to the record, petitioner often failed to properly care for and feed her older children, thereby creating grave concerns about her inability to properly care for a child with more extensive needs.

According to testimony from a DHHR employee below who provided petitioner with services for approximately five years across both abuse and neglect proceedings, petitioner failed to change her attitude and behaviors as a result of those services. The worker further indicated that petitioner's willful refusal to provide proper care to her children persisted from the prior proceeding to the present and, given J.R.'s heightened needs, created a serious concern for the child's wellbeing. The provider testified that J.R. could require an EpiPen twice per day and that she did not believe petitioner could properly administer this drug given that she could not "get her other kids to school on time." Based on this evidence, the circuit court found at disposition that petitioner "failed to follow through with necessary and appropriate changes in her attitudes and behavior," which resulted in petitioner's continued inability to remedy the issues. Contrary to petitioner's argument that she never abused or neglected J.R., West Virginia Code § 49-1-201

defines "neglected child" as one "[w]hose physical or mental health is harmed *or threatened by* a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." (Emphasis added). The entirety of the evidence supports the circuit court's finding that petitioner failed to benefit from the extensive services provided to her in the prior proceeding, which ended approximately nine months prior to the filing of the petition in the instant matter. Further, the circuit court found that petitioner failed to benefit and make the appropriate changes in the current matter. Accordingly, the record is clear that petitioner did, at a minimum, neglect the child by virtue of her continuing inability to properly parent such that his welfare was harmed by remaining in her custody. As such, we find no error in the circuit court's findings with regard to petitioner's first assignment of error alleging that she corrected the conditions of abuse and neglect from the prior proceedings and did not abuse or neglect J.R.

Based upon this same evidence, it is clear that the circuit court did not err in terminating petitioner's parental rights. In her second assignment of error, petitioner asserts that the circuit court should have imposed a less-restrictive dispositional alternative. However, the record clearly establishes that due to petitioner's failure to fully participate in her improvement period such that she could correct the persistent issues of abuse and neglect that spanned several years and two proceedings, there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. Further, it is clear from the record that the child's welfare required termination, given the persistent nature of the conditions giving rise to the petition and the child's heightened needs. While petitioner argues that a less-restrictive dispositional alternative was warranted, she fails to recognize that West Virginia Code § 49-4-604(b)(6) (2019)[6] permits circuit courts to terminate parental rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Again, petitioner relies heavily on her compliance with specific aspects of the improvement period, such as her negative drug screens, to support this argument, while ignoring the circuit court's findings about her failure to improve her parenting generally. As this Court has held, "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *Tiffany Marie S.*, 196 W. Va. at 238-39, 470 S.E.2d at 192-93 (citation omitted). Based on the evidence, the circuit court found that petitioner failed to appropriately change her attitude and behavior such that any compliance with the terms and

---

[6]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

conditions of her improvement period was rendered meaningless. As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison