# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.H.-1**

**No. 19-0791** (Wood County 17-JA-328)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.H.-2, by counsel Eric K. Powell, appeals the Circuit Court of Wood County's August 1, 2019, order terminating her parental rights to A.H.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Robin Bonovitch, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in permitting a Child Protective Services ("CPS") worker to express an opinion as to petitioner's mental capacity, denying her motion to dismiss the petition, and in finding that she neglected the child.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2017, the DHHR filed an abuse and neglect petition alleging that petitioner's parental rights to an older child were terminated in April of 2011. According to the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, they will be referred to as A.H.-1 and A.H.-2, respectively, throughout this memorandum decision.

[2]On appeal, petitioner does not raise an assignment of error regarding the termination of her parental rights to the child.

current petition, in 2009 the DHHR filed a petition charging that petitioner was "not providing adequate and appropriate care to the [older] child" due to her "mental health issues which inhibited [her] ability to care for the child." The DHHR's current petition went on to explain that, following an improvement period in the earlier proceeding, the circuit court terminated petitioner's parental rights to the older child in 2011 because she "incurred emotional illness, mental illness or mental deficiency of such duration or nature as to render her incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills." In regard to A.H.-1, the DHHR alleged that "[d]ue to part of the reason for the prior termination being that [petitioner] was low functioning, there is no way to remedy the issue as evidenced by [petitioner's] participation in the last improvement period." The petition finally stated that "[t]here are no additional services to provide [petitioner] in order to provide her with the ability to appropriately parent." Petitioner thereafter waived her right to a preliminary hearing.

In February of 2018, the circuit court held an adjudicatory hearing and admitted into evidence the petition, adjudicatory order, and dispositional order from petitioner's prior abuse and neglect case. The dispositional order from the prior case included the circuit court's specific finding that petitioner's parental rights to her older child were terminated because petitioner "incurred emotional illness, mental illness or mental deficiency of such a duration or nature as to render her incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills."

The DHHR called one witness, Child Protective Services ("CPS") worker Kylie Pickens. During Ms. Pickens's testimony, the DHHR asked the following: "In your conversations with [petitioner], did she still seem to suffer from any mental impairments?" Counsel for petitioner objected on the grounds that Ms. Pickens was not qualified to answer the question without the DHHR first laying a proper foundation. At that point, the DHHR questioned Ms. Pickens as to her qualifications and training. After this line of questioning, the DHHR again asked Ms. Pickens if she believed petitioner "is . . . able to adequately or appropriately parent the child due to her mental abilities." Counsel for petitioner again objected on the basis that Ms. Pickens is not a medical professional with training in psychology and, thus, not qualified to "giv[e] that diagnosis as to a person's intellect." The circuit court, however, permitted Ms. Pickens to answer, at which point she indicated that petitioner "didn't know . . . what day [a follow-up] appointment [for the child] was" and that she would have to contact a family friend to get the specifics. Ms. Pickens further testified that petitioner "was telling me that she thought the appointment was on either Christmas Eve or Christmas Day." At the close of the DHHR's evidence, petitioner moved to dismiss the petition on the grounds that there was insufficient evidence to support adjudication and that the petition was legally deficient for failing to allege any facts that constituted current abuse or neglect to the child. The circuit court denied the motion.

The circuit court held an additional adjudicatory hearing in March of 2018, during which petitioner presented testimony from psychologist Kristen Deem, the lead career specialist for Care Advantage, a program that helps young adults with work readiness skills, life skills, and leadership skills. Ms. Deem testified that, despite her progress, petitioner had been continuously enrolled in the program since 2012. The average participant completes the program in less than two years, Ms. Deem explained. According to Ms. Deem, petitioner's inability to pass her high school diploma equivalency tests precluded her from completing the program. Ms. Deem also

testified regarding petitioner's preparation for having A.H.-1, although this preparation mostly concerned finances and leave from work, not remedying any of the past issues with her inability to properly parent. Petitioner also called as a witness a friend who has known petitioner for thirteen years and has four children of her own. According to the friend, petitioner spent extensive time around her and her children and the friend allowed petitioner to change her children's diapers, prepare bottles for them, and feed, burp, and hold the children as infants. According to the friend, she never noticed any deficiencies in petitioner's parenting and believed that she demonstrated the ability to parent A.H.-1.

Petitioner testified on her own behalf and disputed evidence submitted in the prior abuse and neglect proceeding that established she had problems diapering her older child prior to the termination of her parental rights to that child. According to petitioner, "the foster family would say that [her older child] would come back with a messy diaper," but that "everything was fine when [her parenting teacher] was there." During her testimony, petitioner failed to identify the skills she would need to work on through services in order to regain custody of her child. Petitioner also admitted to abusing alcohol and overdosing on prescribed antianxiety medication, which resulted in her being airlifted to Columbus, Ohio, for emergency medical treatment in December of 2016.

Following the hearing, the circuit court directed the parties to submit proposed findings of fact and conclusions of law. Ultimately, it entered an adjudicatory order in November of 2018, in which it found that petitioner neglected the child. According to the circuit court,

> [t]he [c]ourt in the previous case found, among other things, that [petitioner] had failed to successfully complete her improvement period due to the following reasons: . . . [she] had problems dealing with the infant when he was fussy; that [petitioner] struggled feeding the child and got frustrated when he did not like the food; that [petitioner] had money issues and that she struggled with budgeting; that [petitioner] did not obtain her GED [and] struggled with trying to obtain it; that [petitioner] struggled to assemble a bed for the infant; that [petitioner] did not take steps to protect the infant after the infant was hurt on an entertainment system; that [petitioner] struggled with diaper changes; and that [petitioner] lacked a good support system.

Further, the circuit court noted that "the [c]ourt [in the prior proceeding] explained that [petitioner] had 'been receiving visitation four days a week along with intense hands-on parenting services and adult life skills services.'" Despite petitioner's receipt of extensive services, the circuit court noted that, in the prior proceeding, termination was based on concern over "the lack of general parenting knowledge including nutrition, feeding schedules, [and] diapering that [petitioner] was never able to master." Ultimately, petitioner's parental rights to her older child were terminated because petitioner "was not able to safely parent the child," despite the DHHR's having provided "more intense teaching, education and training than the [c]ourt has seen in twenty-five years."

As it relates to A.H.-1, the circuit court found that the DHHR presented testimony that petitioner "was not able to recall her child's pediatrician or appointment date for the child"

shortly after her birth. Based on a DHHR worker's conversations with petitioner, the worker "had serious concerns about [petitioner's] ability to parent" the child. The circuit court additionally found that petitioner was hospitalized an extra day after the child's birth because she and the father "got into an argument and he would not come pick her up from the hospital for discharge." The circuit court also considered petitioner's testimony concerning the prior proceeding. According to the circuit court, petitioner testified that, at the time of the prior termination, she "wasn't sure what she needed to adequately care for the [older] child" and, further, that she "didn't know why the [c]ourt terminated her rights." Regarding the issues she needed to address in relation to A.H.-1, petitioner testified that she needed to learn "what they would want me to have as far as in the home for her." Petitioner also testified that she knew how to balance a checkbook, "but when questioned about the details, admitted 'I do not remember.'" When questioned about dealing with A.H.-1 "when she became fussy or irritable," petitioner indicated that she would have to ask a friend for assistance. Ultimately, the circuit court found that

> based upon the parenting issues that [she] still exhibits, namely not knowing what items she needs to care for the child, failure to name the child's pediatrician, failure to know the date of the child's next appointment, not having transportation for herself and the child upon discharge from the hospital and volatile relationship with the father of the child, the child has in fact been neglected by [petitioner].

In December of 2018, the circuit court granted petitioner a post-adjudicatory improvement period. The circuit court further ordered that petitioner submit to a psychological evaluation. In July of 2019, the circuit court held a final dispositional hearing. Petitioner failed to attend, but was represented by counsel. During the hearing, the circuit court was presented with evidence that petitioner "was really non-cooperative and rejecting of many of the concepts presented" in her parenting and adult life skills classes. The circuit court further found that petitioner made no improvement since the granting of the improvement period and that she "requires constant supervision to provide appropriate care to the child." Additionally, the circuit court found that petitioner's psychological evaluation concluded that her prognosis for improved parenting was "poor." According to the evaluating psychologist, petitioner appeared under the influence of alcohol during the evaluation, although the evaluator found that this did not impact the prognosis. The circuit court additionally noted that if petitioner were, in fact, under the influence during her evaluation, it would only further support the finding that petitioner was unable to properly parent, given that she received advance notice of the evaluation and knew that it was being undertaken to determine her fitness to parent. Based on the foregoing, the circuit court found that petitioner suffered "emotional illness, mental illness or mental deficiency of such duration or nature as to render her incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills." Further, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the

child's welfare. As such, the circuit court terminated petitioner's parental rights to the child.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in permitting a CPS worker to offer opinion testimony concerning petitioner's mental capacity as it relates to her ability to properly parent the child. We find, however, that no such testimony occurred below. In support of this assignment of error, petitioner makes much of the fact that counsel for the DHHR asked Ms. Pickens if petitioner suffered from any mental impairments. The record shows, however, that petitioner objected to this question, and it was never answered. Instead, the DHHR laid a foundation for Ms. Pickens's qualifications as a CPS social worker to make determinations as to individuals' ability to properly parent children.

Ms. Pickens testified that she is a licensed social worker with four years of experience, her job requires her to ensure the safety of children, she has been trained to assess the ability of a parent to safely parent a child, and her job requires her to make such assessment in every case she is assigned. "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. Pt. 12, *Bd. of Educ. of McDowell Cty. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990) (citations omitted). Further, "[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 3, *State ex rel. Jones v. Recht*, 221 W. Va. 380, 655 S.E.2d 126 (2007) (citation omitted). In this case, Ms. Pickens's qualifications clearly entitled her to express an opinion regarding petitioner's ability to safely parent a child, especially considering that her

---

[3]The father's parental rights were also terminated below. According to respondents, the permanency plan for the child is adoption in the current foster home.

determination on the issue informed her decision to seek to remove the child due to imminent danger. Further, it is clear that Ms. Pickens did not render an opinion as to petitioner's mental impairment, as petitioner argues on appeal.

Because Ms. Pickens did not answer the DHHR's initial question as to whether she believed petitioner suffered from mental impairment, the only question that Ms. Pickens did answer that petitioner raises an issue with was whether she believed petitioner was "able to adequately or appropriately parent the child due to her mental abilities." We find no error in the circuit court's permitting Ms. Pickens to answer this question, as the witness's answer did not implicate any specialized knowledge or skill requiring the witness to have a background in psychology or healthcare, as petitioner argues. Indeed, the question of whether Ms. Pickens, a CPS worker, believed that petitioner was able to adequately or appropriately parent her child speaks directly to Ms. Pickens's area of expertise and to the heart of CPS and its involvement in abuse and neglect proceedings. As evidenced by Ms. Pickens's answer to the question, counsel for the DHHR's inclusion of the phrase "due to her mental abilities" was an unnecessary qualification and in no way required Ms. Pickens to express an opinion in regard to anything outside her area of expertise. Specifically, in response to this question, Ms. Pickens stated that petitioner "didn't know . . . what day [a follow-up] appointment [for the child] was" and that she would have to contact a family friend to get the specifics. Ms. Pickens further testified that petitioner "was telling me that she thought the appointment was on either Christmas Eve or Christmas Day." This evidences the fact that Ms. Pickens's answer in no way expressed an opinion that required expertise in psychology or healthcare. Rather, Ms. Pickens testified to specific facts regarding petitioner's apparent inability to recall basic information related to crucial follow-up care for her newborn infant. Given that petitioner's parental rights to her older child were terminated because of her inability to properly parent the infant—including struggling to feed and diaper the child, failing to protect the child from injury, and exhibiting an inability to deal with the child when he was "fussy"—this testimony was directly relevant to the issue of whether petitioner remedied the issues of abuse and neglect upon which the prior termination was based. Accordingly, we find no error in the circuit court permitting this testimony.

Next, petitioner argues that the circuit court erred in denying her motion to dismiss the petition. According to petitioner, the petition in this matter almost exclusively addressed the facts surrounding the prior involuntary termination of her parental rights to an older child. In regard to A.H.-1, the petition alleged that "there is no way to remedy the issue" from the prior case because termination was based, in part, on petitioner being "low functioning." According to petitioner, there were no specific facts establishing that petitioner abused or neglected A.H.-1, as required by Rule 18 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. We do not agree and, instead, find that the petition in this matter was sufficient such that dismissal was not warranted.

Specifically, Rule 18(c) requires that the petition contain

[a] statement of facts justifying court intervention which is definite and particular and describes: (a) The specific misconduct, including time and place, if known, or incapacity of the parent(s) and other person(s) responsible for the child's care; and

6

(b) Any supportive services provided by the Department or others to remedy the alleged circumstances.

Moreover,

> [w]here a child neglect petition is premised upon the inability of the parent to care for the child due to the parent's mental illness, such petition must set forth specific allegations of fact sufficient to inform the parent of the nature of the condition or conduct which constitutes or is likely to result in neglect in order to satisfy the requirements of W.Va. Code [§ 49-4-601].

Syl. Pt. 2, *State v. Scritchfield*, 167 W. Va. 683, 280 S.E.2d 315 (1981).

On appeal, petitioner argues that the DHHR's failure to include in the petition the specifics of Ms. Pickens's conversation concerning petitioner's understanding of A.H.-1's medical care is fatal, given that this conversation formed the entire basis of the DHHR's allegation that petitioner abused or neglected A.H.-1. We find, however, that it was unnecessary to include the specifics of that conversation in detail, because the petition contained specific facts related to petitioner's inability to properly parent the child. While succinct, the petition plainly alleged that petitioner gave birth to A.H.-1 in December of 2017 and that because the termination in the prior case was based on petitioner's intellectual inability to properly parent, "there is no way to remedy this issue as evidenced by [petitioner's] participation in the last improvement period." It is sufficient that the DHHR clearly alleged that petitioner's parental rights to an older child were terminated because she "incurred emotional illness, mental illness or mental deficiency of such duration or nature as to render her incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills" and that those conditions persisted after A.H.-1's birth.[4] That Ms. Pickens elaborated on the details of her interaction with petitioner at adjudication did not require the entirety of her testimony to be reduced to writing in the

---

[4]In support of this assignment of error, petitioner additionally alleges that she was denied fair notice of the allegations against her and a meaningful opportunity to be heard at adjudication. According to petitioner,

> West Virginia Code, Chapter 49, Article [4], Section [601] . . . and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing.

Syl. Pt. 2, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). Given that we find that the DHHR appropriately complied with the requirements of Rule 18, we find that petitioner is entitled to no relief in regard to her assertions that she was denied fair notice or a meaningful opportunity to be heard. *See* W. Va. R. P. for Child Abuse and Neglect.

petition prior to the holding of that evidentiary hearing, and we find that petitioner is entitled to no relief in this regard.

Petitioner further argues that her motion to dismiss should have been granted because the DHHR failed to prove neglect or abuse by clear and convincing evidence in its case-in-chief. According to petitioner, other than Ms. Pickens's testimony, the DHHR relied solely on the record from petitioner's prior case to support adjudication in this matter. We find, however, that this evidence was sufficient to establish that petitioner, at a minimum, neglected the child.

Petitioner's challenge to the sufficiency of the evidence is governed by the following:

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further,

> [w]hen an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § [49-4-605], prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

Syl. Pt. 4, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999). Additionally, pursuant to West Virginia Code § 49-1-201, a "neglected child" is one "[w]hose physical or mental health is harmed *or threatened by* a present refusal, failure or *inability* of the child's parent . . . to supply the child with necessary food, clothing, shelter, *supervision*, *medical care*, or education." (Emphasis added). Finally, it is important to note the following:

> The [applicable] standard of review requires deference by this Court to the findings of a circuit court in a civil abuse and neglect proceeding. The critical nature of unreviewable intangibles justify the deferential approach we accord findings by a circuit court. As we said in *Brown v. Gobble*, 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996), "the standard of review for judging a sufficiency of evidence claim is not appellant friendly." *See Gentry v. Mangum*, 195 W.Va. 512, 520 n. 6, 466 S.E.2d 171, 179 n. 6 (1995) ("Only rarely and in extraordinary

circumstances will we, from the vista of a cold appellate record, reverse a circuit court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.").

*State ex rel. Diva P. v. Kaufman*, 200 W. Va. 555, 562, 490 S.E.2d 642, 649 (1997). With these parameters in mind, it is clear that petitioner's challenge to the sufficiency of the evidence upon which to base her adjudication requires us to afford the circuit court's findings substantial deference and that petitioner carries an incredibly high burden.

Based on the plain language of the definition of "neglected child" set forth above, we find that the DHHR satisfied its burden of proof for establishing that petitioner neglected A.H.-1. Ms. Pickens's testimony, taken together with the evidence surrounding the prior termination of petitioner's parental rights, established that A.H.-1's physical health was threatened by petitioner's inability to properly supervise and obtain medical care for the child. While brief, Ms. Pickens was able to establish that petitioner was already struggling to recall basic information necessary for the infant's follow up care, which is a condition similar to that upon which her parental rights to an older child were terminated. The DHHR's evidence spoke directly to petitioner's continued inability to properly parent a child that has persisted across two abuse and neglect proceedings separated by several years.

In support of this assignment of error, petitioner points out the following:

This Court made clear that "while the Department does have a mandatory duty to file a petition [based on a prior involuntary termination of parental rights], *a circuit court may not terminate parental rights without additional evidence of abuse or neglect of the current child.*" [*In re George Glen B., Jr.*, 207 W.Va. 346,] 350, [532 S.E.2d 64,] 68 [(2000)]. Therefore, under our law, it is clear that the DHHR retains the burden of showing by clear and convincing evidence, even in a case in which there has been a prior termination of parental rights, that the subject child is neglected or abused.

*In re K.L.*, 233 W. Va. 547, 553, 759 S.E.2d 778, 784 (2014) (emphasis added). The Court provided further instruction on this issue by explaining that in cases of a prior termination of parental rights,

[t]here must be specific allegations and evidence of abuse or neglect of [the subsequently born child], *which could include demonstrating that [the subsequently born child] was abused and/or neglected by showing the petitioner failed to correct the conditions that led to the prior termination of her parental rights* and/or that other circumstances exist which would establish abuse and/or neglect.

*Id.* at 554, 759 S.E.2d at 785 (emphasis added).

While petitioner argues that the DHHR relied entirely on the prior termination of her parental rights and failed to present evidence of additional evidence of abuse or neglect to A.H.-

1, we disagree. As set forth above, the evidence established that petitioner neglected A.H.-1 by threatening her health because of an inability to properly supervise the child or ensure that she received proper medical care. As instructed in *K.L.*, the DHHR here demonstrated not only that petitioner failed to correct the conditions that led to the prior termination, but cited to specific findings from the prior proceeding that these conditions were incapable of correction. Moreover, the DHHR established that these conditions persisted through Ms. Pickens's testimony as to petitioner's inability to ensure that the child received proper medical care. As such, dismissal of the petition against petitioner upon an alleged failure to satisfy the burden of proof following the DHHR's case-in-chief was not warranted.[5]

Finally, petitioner argues that the circuit court erred in finding that she neglected the child. Although we have already established that the DHHR's evidence was sufficient to satisfy this burden, we note that in determining whether the findings from the adjudicatory order were appropriate, this Court must also review the evidence introduced following the denial of petitioner's motion to dismiss the petition. Petitioner is correct that this evidence, including her own testimony intended to rebut the DHHR's evidence, is irrelevant to a determination of whether the DHHR carried its burden of proof at the time she moved for dismissal. However, it is relevant to the circuit court's ultimate finding at adjudication and this Court must consider the totality of all the evidence introduced at adjudication in resolving petitioner's final assignment of error.[6]

---

[5]In support of this assignment of error, petitioner also alleges that the circuit court's findings of fact to support the denial of her motion to dismiss the petition were insufficient and legally flawed. According to petitioner, in denying her motion the circuit court found that the evidence was "sufficient to proceed." Petitioner argues that this is not the appropriate standard, as the circuit court was instead required to make a finding as to whether the child was abused and/or neglected. *See* W. Va. R. P. For Child Abuse and Neglect Proceedings 27. We note, however, that

> "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005). Having determined that the DHHR's evidence in its case-in-chief was sufficient to establish that petitioner neglected the child, we find that petitioner is entitled to no relief in this regard.

[6]In support of this assignment of error, petitioner also alleges that the burden of proof was improperly shifted to her at adjudication. Petitioner is correct that this Court has held that "the burden of proof never shifts from the DHHR to the parent throughout a case involving allegations of child abuse and neglect." *K.L.*, 233 W. Va. at 554, 759 S.E. 2d at 785. However, the record in this matter shows no such burden shifting. Petitioner points to testimony from Ms. Pickens wherein the witness indicated that "[i]n an aggravated circumstance petition it's not [the

(continued . . . )

10

In its adjudicatory order, the circuit court specifically found that petitioner neglected the child

> based upon the parenting issues that [she] still exhibits, namely not knowing what items she needs to care for the child, failure to name the child's pediatrician, failure to know the date of the child's next appointment, not having transportation for herself and the child upon discharge from the hospital and volatile relationship with the father of the child.

According to petitioner, none of these allegations were contained in the DHHR's petition and the failure to put her on notice of these allegations constitutes a violation of her due process rights. However, as addressed above, we find that petitioner was put on full notice of the allegations against her and was permitted a meaningful opportunity to be heard in response to those allegations. That the circuit court heard additional, specific evidence in support of the allegations in the petition and subsequently made findings regarding adjudication based upon that evidence does not constitute a due process violation. Rather, the circuit court was tasked with weighing the evidence and making appropriate findings. Under West Virginia Code § 49-4-601(i),

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

Based on this statute, it is clear that the circuit court was required to consider all evidence introduced during the adjudicatory hearing. Further, the circuit court's finding of neglect was clearly based on conditions existing at the time of the petition's filing, given that it related to petitioner's inability to properly parent the child at the time the matter was initiated. As such, we find that the circuit court properly adjudicated petitioner of neglecting A.H.-1 and that she is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 1, 2019, order is hereby affirmed.

Affirmed.

---

DHHR] that has to show that something has changed, [petitioner] has to show that something's changed. I mean, it's put on her to show that." This testimony is simply insufficient to show that the circuit court shifted the burden of proof to petitioner below, especially considering our analysis above related to the DHHR successfully satisfying the burden of proof by establishing that petitioner neglected the child.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison